UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOLD SECURITY LLC, a Wisconsin Limited Liability Company,<br><br>    Plaintiff,<br><br> v.<br><br>MICROSOFT CORPORATION, a Washington Corporation,<br><br>    Defendant. | No. 23-cv-899 MJP<br><br>**DEFENDANT MICROSOFT'S MOTION TO DISMISS**<br><br>**NOTE ON MOTION CALENDAR: AUGUST 4, 2023** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DEFENDANT MICROSOFT'S
MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 1

    A.    The Agreements ............................................................................................ 1

    B.    Hold seeks to limit Microsoft's ability to use and retain Microsoft-owned Deliverables. .................................................................................................. 3

ARGUMENT ...................................................................................................................... 3

    A.    Legal standard ............................................................................................... 3

    B.    Hold's claim for breach of the MSSA should be dismissed with prejudice. .......... 4

        1.    Microsoft can use and keep the Account Credential Data because it is a Microsoft-owned Deliverable. ........................................................ 4

        2.    Hold's attempt to narrow the Scope of the Deliverables fails as a matter of law. ................................................................................. 7

        3.    Hold's claim fails on the pleadings even under its incorrect interpretation of the contract. ............................................................. 9

    C.    Hold's claim for breach of the NDA should be dismissed because the Account Credential Data is not Hold's Confidential Information. ...................... 10

    D.    Hold's unjust enrichment and promissory estoppel claims fail as a matter of law because the MSSA governs the conduct at issue. .................................... 11

    E.    Hold's tortious interference claim should be dismissed for failure to state a claim. ....................................................................................................... 13

CONCLUSION ................................................................................................................... 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................................4, 15

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696, 699 (9th Cir. 1988), *aff'd,* 702 F. App'x 595 (9th Cir. 2017) ..........................3

*Bardy v. Cardiac Sci. Corp.,*
No. C13-0778JLR, 2013 WL 5588313 (W.D. Wash. Oct. 10, 2013).....................................12

*BKWSPOKANE, LLC v. F.D.I.C.,*
No. 12-CV-0521-TOR, 2013 WL 312389 (E.D. Wash. Jan. 25, 2013),
*aff'd,* 663 F. App'x 524 (9th Cir. 2016)...........................................................................12

*Bombardier Inc. v. Mitsubishi Aircraft Corp.,*
383 F. Supp. 3d 1169 (W.D. Wash. 2019)..............................................................13, 14, 15

*Brutsky v. Cap. One, N.A.,*
No. C17-0491 RAJ, 2018 WL 513586 (W.D. Wash. Jan. 23, 2018).........................4, 5, 6, 10

*Calliari v. Sargento Foods, Inc.,*
Nos. C08-1111MJP, C08-1112MJP, 2009 WL 3784345 (W.D. Wash. Nov.
10, 2009), *aff'd,* 442 F. App'x 266 (9th Cir. 2011) .............................................................12

*Chakravarty v. Peterson,*
No. C20-1576 MJP, 2021 WL 1063312 (W.D. Wash. Mar. 19, 2021)....................................4

*City of Leavenworth v. Projekt Bayern Ass'n,*
No. 2:22-CV-0174-TOR, 2023 WL 2354906 (E.D. Wash. Mar. 3, 2023) ............................13

*Cognizant Worldwide Ltd. v. Barrett Bus. Servs., Inc.,*
No. C19-1848-JCC-MLP, 2020 WL 6434835 (W.D. Wash. May 7, 2020),
*report and recommendation adopted,* No. C19-1848-JCC, 2020 WL 5105443
(W.D. Wash. Aug. 31, 2020) ........................................................................................5, 8

*DDSSBOS LLC v. Boeing Co.,*
No. 22-249 MJP, 2022 WL 17403214 (W.D. Wash. Dec. 2, 2022)........................................4

*Delashaw v. Seattle Times Co.,*
C18-0537JLR, 2018 WL 4027078 (W.D. Wash. Aug. 23, 2018) .........................................15

DEFENDANT MICROSOFT'S
MOTION TO DISMISS – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

*Drut Techs., Inc. v. Microsoft Corp.*,
  No. 2:21-CV-01653-BJR, 2022 WL 2156962 (W.D. Wash. June 15, 2022) .....................7, 8

*Ehreth v. Cap. One Servs., Inc.*,
  No. C08-0258RSL, 2008 WL 3891270 (W.D. Wash. Aug. 19, 2008) ....................................12

*Kazia Digo, Inc. v. Smart Circle Int'l, LLC*,
  No. C11-544RSL, 2012 WL 836233 (W.D. Wash. Mar. 12, 2012) .........................................14

*Key Bank of Wash. v. Concepcion*,
  No. C93-1737R, 1994 WL 762157 (W.D. Wash. Sept. 20, 1994) .............................................8

*King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV*,
  364 P.3d 784 (Wash. Ct. App. 2015), *aff'd*, 398 P.3d 1093 (Wash. 2017) ..............................6

*Lombardi's Cucina, Inc. v. Harleysville Ins.*,
  No. C09-1620-JCC, 2010 WL 3244908 (W.D. Wash. Aug. 17, 2010) .................................6, 7

*Mann L. Grp. v. Digi-Net Techs.*, Inc., No. C13-59RAJ, 2013 WL 3754808
  (W.D. Wash. July 15, 2013) ....................................................................................................14

*McCants v. Skyline at First Hill*,
  No. C21-0871-RSM, 2022 WL 3646301 (W.D. Wash. Aug. 24, 2022) ................................11

*Minnick v. Clearwire US, LLC*,
  683 F. Supp. 2d 1179 (W.D. Wash. 2010) .............................................................................11

*Pac. Coast Feather Co. v. Ohio Mattress Co. Licensing & Components Grp.*,
  No. C12-1501MJP, 2013 WL 414225 (W.D. Wash. Feb. 1, 2013) ...................................10, 11

*Pendleton v. City of Spokane*,
  No. 2:18-CV-0267-TOR, 2018 WL 11468676 (E.D. Wash. Oct. 12, 2018) .........................14

*Pengbo Xiao v. Feast Buffet, Inc.*,
  387 F. Supp. 3d 1181 (W.D. Wash. 2019) .............................................................................11

*Phillips-Harris v. BMW of N. Am., LLC*,
  No. 20-55612, 2022 WL 72355 (9th Cir. Jan. 7, 2022) ...........................................................7

*Robertson v. GMAC Mortg. LLC*,
  982 F. Supp. 2d 1202 (W.D. Wash. 2013) ...............................................................................3

*Stokes Lawrence, P.S. v. Block 24 Seattle Ltd.*,
  No. C12-1366-JCC, 2013 WL 104548 (W.D. Wash. Jan. 8, 2013) ...................................6, 11

*Stuc-O-Flex Int'l, Inc. v. Low & Bonar, Inc.*,
  No. 2:18-CV-01386-RAJ, 2019 WL 4688803 (W.D. Wash. Sept. 26, 2019) .......................15

DEFENDANT MICROSOFT'S
MOTION TO DISMISS – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

*SunTrust Banks, Inc. v. Be Yachts, LLC*,
    No. C18-840 MJP, 2019 WL 1787226 (W.D. Wash. Apr. 24, 2019) ......................................3

*Unelko Corp. v. Rooney*,
    912 F.2d 1049 (9th Cir. 1990) ...........................................................................................15

*United Fed'n of Churches, LLC v. Johnson*,
    522 F. Supp. 3d 842 (W.D. Wash. 2021), *reconsideration denied*,
    No. C20-0509RAJ, 2022 WL 1093025 (W.D. Wash. Apr. 12, 2022)........................13, 14, 15

*Univera, Inc. v. Terhune*,
    No. C09-5227 RBL, 2010 WL 3489932 (W.D. Wash. Aug. 31, 2010) ....................12, 13, 14

*Young v. Young*,
    P.3d 1258 (Wash. 2008)..........................................................................................................11

**STATUTES**

17 U.S.C. § 201(b) ...........................................................................................................................5

**RULES**

Rule 12(b)(6)...................................................................................................................3, 12, 13, 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

## INTRODUCTION

Defendant Microsoft Corporation ("Microsoft") paid Plaintiff Hold Security LLC ("Hold") to collect and supply Microsoft with "Account Credential Data" for ownership by Microsoft. Under the parties' contract, the Account Credential Data is a Deliverable that Hold would collect and provide to Microsoft, according to Microsoft's specifications and for Microsoft's ownership. Ignoring that language, Hold's Complaint alleges that Microsoft breached the parties' contract by using and retaining the Account Credential Data. But Microsoft cannot be liable for using and keeping *that which it contracted with Hold to own*.

The plain language of the contract directly contradicts Hold's theory, which unsurprisingly rests on statements in a pre-contractual e-mail that were omitted from, and expressly superseded by, the contract at issue. Because Hold's breach-of-contract claims are barred by the plain language of the parties' agreements, those claims should be dismissed with prejudice. And because Hold's unjust enrichment and promissory estoppel claims indisputably concern conduct governed by the parties' contract, they also should be dismissed without leave to amend. Lastly, the Court should dismiss Hold's tortious interference claim for failure to state a claim.

## BACKGROUND

### A.     The Agreements

On February 26, 2014, Microsoft and Hold entered into a Non-Disclosure Agreement ("NDA") limiting the disclosure of Confidential Information. Compl. ¶ 3.5; Declaration of Jacob Thornburgh ("Thornburgh Decl."), Ex. A (NDA). The NDA defines "Confidential Information" as "non-public information, know-how and trade secrets in any form" that is "designated as 'confidential'" or a "reasonable person knows or reasonably should understand to be confidential." NDA § 2(a). Confidential Information does not encompass information that was "lawfully known to the receiver of the information without an obligation to keep it confidential." *Id.* § 2(b). The

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

NDA prohibits "disclos[ing] the other's confidential information to third parties," *id.* § 3(a), but allows each party to disclose such information "to each other" and to its "own affiliates," *id.* § 1.

The following year, the parties entered into a Master Supplier Services Agreement, effective February 6, 2015 ("MSSA"), in which Microsoft agreed to pay Hold for Deliverables developed by Hold at Microsoft's request, for Microsoft's ownership. *See* Compl. ¶ 3.9; Thornburgh Decl., Ex. B (MSSA) § 3(e)(1) ("All Deliverables are 'work made for hire' for Microsoft," but, to "the extent any Deliverables do not qualify as a work made for hire," Hold "assigns all right, title and interest in and to the Deliverables, including all IP rights, to Microsoft"). "Deliverables" "means all IP or other work product developed by [Hold] . . . for Microsoft under a [Statement of Work] or as part of the Services." MSSA § 1(c). And "Services" "means the services specified in a [Statement of Work] or otherwise performed by [Hold] under this Agreement." *Id.* § 1(h); *see also id.* § 2(a) ("The parties will describe the Services in one or more [Statements of Work].").

In "accordance with the terms of the [MSSA]," the parties executed a Statement of Work, effective February 15, 2015 ("SOW"), which describes the Services that Hold would supply to Microsoft under the MSSA, as well as a schedule for their completion and delivery. *See* Compl. ¶ 3.10; Thornburgh Decl., Ex. C. (SOW). Under the SOW, Hold "will provide to Microsoft all currently held Account Credential Data"—i.e., "lists of pairs of user id and password where user id is in form of a valid e-mail address . . . only and password is non-blank"—"as a one-time deliverable as a 'catchup'." SOW §§ 3(b), 4. And Hold will "on a daily basis collect and deliver to Microsoft compromised Account Credential Data" for 20 specified domains.[1] *Id.*

---

[1] In 2020, the parties "executed an additional Master Supplier Services Agreement (the '2020 MSSA')" and "a Statement of Work in furtherance of the 2020 MSSA (the '2020 SOW')." Compl. ¶¶ 3.20–3.21. Because Hold does not allege a breach of the 2020 MSSA or 2020 SOW, this Motion does not address those agreements, and Microsoft refers to the 2015 MSSA and 2015 SOW simply as "MSSA" and "SOW."

DEFENDANT MICROSOFT'S
MOTION TO DISMISS – 2

**B.** **Hold seeks to limit Microsoft's ability to use and retain Microsoft-owned Deliverables.**

Hold sued Microsoft for breach of the MSSA based on Microsoft's use of the Microsoft-owned Deliverables.[2] Specifically, Hold alleges that Microsoft breached the MSSA by "retaining customer credentials"—i.e., Account Credential Data supplied to Microsoft as a Deliverable—"that did not match the personal information of customer [sic] of Microsoft domains owned at that time." Compl. ¶ 4.6. Hold further claims that Microsoft breached the MSSA by utilizing the Account Credential Data "for purposes outside of the accepted scope." *Id.* ¶ 4.7. Relatedly, Hold alleges that Microsoft breached the NDA through its use of the Microsoft-owned Account Credential Data. *Id.* ¶ 5.6. And Hold brings two extra-contractual claims (unjust enrichment and promissory estoppel) against Microsoft for refusing to destroy the Deliverables—alleged conduct that Hold acknowledges is squarely governed by the parties' contract. *Id.* ¶¶ 6.1–7.7; *see id.* ¶¶ 4.4, 4.6. Lastly, Hold claims that Microsoft tortiously interfered with an unidentified business expectancy between Hold and a former board member by releasing "false information," which Hold does not disclose. *Id.* ¶¶ 8.2–8.6.

## ARGUMENT

**A.** **Legal standard**

Rule 12(b)(6) provides for dismissal based on "the lack of a cognizable legal theory." *Robertson v. GMAC Mortg. LLC*, 982 F. Supp. 2d 1202, 1206 (W.D. Wash. 2013) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)), *aff'd*, 702 F. App'x 595 (9th Cir. 2017). Dismissal is also "appropriate where a complaint fails to allege 'enough facts to state a claim to relief that is plausible on its face.'" *SunTrust Banks, Inc. v. Be Yachts, LLC*, No. C18-840 MJP, 2019 WL 1787226, at *1 (W.D. Wash. Apr. 24, 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court accepts well-pled facts as true, it need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

---

[2] Hold sued Microsoft in the Superior Court of the State of Washington for King County. *See* Dkt. No. 1-2. Microsoft removed to this Court on June 14, 2023. *See* Dkt. No. 1.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

inferences." *Chakravarty v. Peterson*, No. C20-1576 MJP, 2021 WL 1063312, at *2 (W.D. Wash. Mar. 19, 2021) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing a motion to dismiss, the Court may consider a document incorporated by reference into the complaint—even if it is not attached—"if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *DDSSBOS LLC v. Boeing Co.*, No. 22-249 MJP, 2022 WL 17403214, at *2 (W.D. Wash. Dec. 2, 2022) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). The doctrine thus "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 998, 1002 (9th Cir. 2018)).

Here, the NDA, MSSA, and SOW are incorporated into the Complaint by reference, as Hold refers to those documents extensively and they form the basis of Hold's breach-of-contract claims. *See* Compl. ¶¶ 3.5, 3.9–3.10, 3.15, 4.1–5.7; *DDSSBOS*, 2022 WL 17403214, at *3 (contracts underlying plaintiff's claims were incorporated by reference).

## B. Hold's claim for breach of the MSSA should be dismissed with prejudice.

### 1. Microsoft can use and keep the Account Credential Data because it is a Microsoft-owned Deliverable.

Hold's claim for breach of the MSSA is not cognizable for the fundamental reason that it does not and cannot allege a breach of any contractual term. Under Washington law, a "breach of contract claim must point to a provision of the contract that was breached." *Brutsky v. Cap. One, N.A.*, No. C17-0491 RAJ, 2018 WL 513586, at *6 (W.D. Wash. Jan. 23, 2018) (citing, *e.g.*, *Elliot Bay Seafoods, Inc. v. Port of Seattle*, 98 P.3d 491, 494 (Wash. Ct. App. 2004)). Hold alleges that Microsoft breached the MSSA in two ways: by (1) "improperly retaining customer credentials accessed by Hold that did not match to the personal information of customer [sic] of Microsoft

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

domains owned at that time," and (2) "utilizing the accessed stolen credentials for purposes outside of the accepted scope." Compl. ¶¶ 4.6–4.7.

A telltale sign that this claim has no merit is that Hold fails to cite any provision of the MSSA or SOW that bars or limits Microsoft's right to retain or use the Account Credential Data. *See Brutsky*, 2018 WL 513586, at *6. In other words, Hold's breach-of-contract claim does not even identify the portion of the contract that was breached.

Hold does not identify a contractual term barring such conduct because none exists. Nor could it: the Account Credential Data that Hold provided to Microsoft under the MSSA is a Deliverable *that Microsoft owns*. Microsoft agreed to pay Hold to develop and supply specified Deliverables for Microsoft. *See generally* MSSA & SOW. To that end, the MSSA unambiguously provides that "*[a]ll Deliverables are 'work made for hire' for Microsoft* under applicable copyright law," but, to "the extent any Deliverables do not qualify as a work made for hire, *[Hold] assigns all right, title and interest in and to the Deliverables, including all IP rights, to Microsoft.*"[3] MSSA § 3(e)(1) (emphasis added). The "Deliverables" are "all IP or other work product developed by [Hold] . . . for Microsoft under a SOW or as part of the Services." *Id.* § 1(c). And "Services," as defined in the SOW, include "provid[ing] to Microsoft *all currently held Account Credential Data as a one-time deliverable* as a 'catch-up,'" and "*provid[ing] compromised Account Credential Data on a daily basis*" for 20 listed domains. SOW §§ 2(b), 4 (emphasis added).

The Account Credential Data that Hold "collect[ed] and deliver[ed] to Microsoft" is a Deliverable—in fact, *the only Deliverable* under the MSSA. *See id.* Hold's breach-of-contract claim thus fails on two grounds: it not only alleges that Microsoft "breached terms not contained in the agreement," but "the terms of the [MSSA also] contradict [Hold's] allegations." *Cognizant Worldwide Ltd. v. Barrett Bus. Servs., Inc.*, No. C19-1848-JCC-MLP, 2020 WL 6434835, at *4 (W.D.

---

[3] "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, *owns all of the rights comprised in the copyright*." 17 U.S.C. § 201(b) (emphasis added).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

1    Wash. May 7, 2020), *report and recommendation adopted*, No. C19-1848-JCC, 2020 WL 5105443

2    (W.D. Wash. Aug. 31, 2020); *see also Brutsky*, 2018 WL 513586, at *6.

3        Basic principles of contract interpretation also preclude Hold's (incorrect) interpretation of

4    the MSSA. Reading the contract to preclude Microsoft from retaining or using the Account Cre-

5    dential Data would render Microsoft's "Ownership of Deliverables" superfluous. MSSA § 3(e).

6    Indeed, Microsoft cannot both own the Deliverables and be barred from keeping or using them.

7    *See Stokes Lawrence, P.S. v. Block 24 Seattle Ltd.*, No. C12-1366-JCC, 2013 WL 104548, at *3

8    (W.D. Wash. Jan. 8, 2013) ("Plaintiff's interpretation fails because it . . . renders portions of the

9    [contract] meaningless."). For the same reason, Hold's assertion that Microsoft cannot retain or

10   use Account Credential Data that Microsoft owns would impermissibly result in absurd conse-

11   quences. *See Lombardi's Cucina, Inc. v. Harleysville Ins.*, No. C09-1620-JCC, 2010 WL 3244908,

12   at *3 (W.D. Wash. Aug. 17, 2010) ("The Court interprets contracts to avoid absurd results." (citing

13   *E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 726 P.2d 439, 443 (Wash. 1986))).

14       Hold's interpretation of the MSSA is also inconsistent with two other provisions concern-

15   ing the Deliverables. *See King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-*

16   *Kemper, JV*, 364 P.3d 784, 802 (Wash. Ct. App. 2015) (courts interpret contract language in light

17   of other provisions), *aff'd*, 398 P.3d 1093 (Wash. 2017).

18       ***First***, the parties narrowed the scope of the Deliverables in one respect but did *not* do so in

19   identifying Account Credential Data as a Deliverable. Specifically, the SOW provides that Hold's

20   "proprietary methods for gathering Account Credential Data from sites on the Internet shall not be

21   considered Supplier IP incorporated into the Deliverables." SOW § 3(b)(2). That provision clari-

22   fies that the parties knew how to draft a carveout from the Deliverables, and they did so expressly

23   as to Hold's "proprietary methods for *gathering*" the Account Credential Data. *See id.* The absence

24   of any similar language addressing the Account Credential Data *itself* only underscores what the

25   MSSA and SOW already make clear: that the Deliverables encompass the Account Credential

26   Data that Hold collected at Microsoft's request, to Microsoft's specifications, for Microsoft's

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

ownership. *See Phillips-Harris v. BMW of N. Am., LLC*, No. 20-55612, 2022 WL 72355, at *2 (9th Cir. Jan. 7, 2022) ("BMW failed to demonstrate that permitting it to compel arbitration would be 'consistent with the objectives of the contract and the reasonable expectations of the contracting parties'" because the "clause does not mention BMW even though the parties knew how to give enforcement powers to non-signatories").

**Second**, the parties' contract gives Microsoft an irrevocable and unencumbered license to use *even Hold's IP*. The MSSA provides that, to the extent Hold's IP is incorporated into the Deliverables, Hold "grants Microsoft a worldwide, nonexclusive, perpetual, irrevocable, royalty-free, fully paid up right and license" to, among other things, "use, reproduce, format, modify, and create derivative works of the applicable Supplier IP[.]" MSSA § 3(d); *cf. Drut Techs., Inc. v. Microsoft Corp.*, No. 2:21-CV-01653-BJR, 2022 WL 2156962, at *4–5 (W.D. Wash. June 15, 2022) (holding that Microsoft's "worldwide, nonexclusive, perpetual, irrevocable, royalty-free, fully paid-up right and license" granted under MSSA "could not be revoked under any circumstances, even if there is a material breach of the agreement" (cleaned up)).

Although this provision does not apply here—Hold does not allege that any Supplier IP was incorporated into the Deliverables, so Microsoft simply owns the Deliverables without the need for a license—it highlights the unreasonableness of Hold's argument. Indeed, it would be nonsensical for Microsoft to have a "perpetual, irrevocable," and unfettered right to "use" *Supplier-owned IP* incorporated into the Deliverables and yet be barred from using or retaining *Microsoft-owned* Account Credential Data that does not include Supplier IP. *See Lombardi's Cucina*, 2010 WL 3244908, at *3 (rejecting contract interpretation that would lead to absurd results).

### 2. Hold's attempt to narrow the Scope of the Deliverables fails as a matter of law.

Hold tries to limit the Deliverables to only Account Credential Data that matches Microsoft's "then-existing customers"; Hold asserts that Microsoft cannot use and must delete the rest. *See* Compl. ¶¶ 3.11–3.14. Unsurprisingly, Hold's support for that argument comes not from

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

the parties' contract, but a 2014 pre-contractual e-mail from a Microsoft employee indicating that Microsoft will "limit use of the data to activities that are designed to prevent or mitigate harm to our customers" and will thereafter "securely destroy all copies of the data." Compl. ¶¶ 3.3–3.4, 3.6–3.7, 3.12. The *2014* "Pope E-mail" has no bearing on the parties' rights and obligations under the *2015* MSSA, which (1) does not contain the commitments set forth in the e-mail, and (2) expressly "supersedes all prior and contemporaneous communications, whether written or oral, regarding the subject matter covered in this Agreement." MSSA § 12(g); *see Key Bank of Wash. v. Concepcion*, No. C93-1737R, 1994 WL 762157, at *4 (W.D. Wash. Sept. 20, 1994) (rejecting breach-of-contract claim based on extra-contractual commitments "due to the language of the integration clause," which "clearly stated that it superseded all prior understandings . . . and that the prior agreements were no longer of legal effect"); *see also Drut v. Microsoft*, 2022 WL 2156962, at *4 (W.D. Wash. June 15, 2022) (declining to consider extrinsic evidence that "flatly contradicts the MSSA's clear language").

Otherwise, Hold quotes general language from the SOW addressing Microsoft's stated objective for the Deliverables: "Microsoft has asked [Hold] to deliver compromised 'Account Credential Data' that have been recovered by [Hold] from sites on the Internet in order to reveal and protect against threats to services, brands and domains owned by Microsoft." Compl. ¶ 3.10 (quoting SOW § 3(b)). But Microsoft's stated goal for using the Deliverables, once it received and took ownership of them, does not (and, as discussed above, logically cannot) limit what is encompassed in the Deliverables as a threshold matter. *See, e.g.*, SOW §§ 2(b), 3 (Services, i.e., Deliverables, include "provid[ing] to Microsoft all currently held Account Credential Data as a one-time deliverable as a 'catch-up,'" and "provid[ing] compromised Account Credential Data on a daily basis" for 20 domains). Critically, this general-purpose language from the SOW neither *prohibits* Microsoft from keeping or using the Account Credential Data in any way, nor does it *require* Microsoft to delete it. *Cf. Cognizant*, 2020 WL 6434835, at *4 (recommending dismissal of breach-of-contract claim that relied on "stated objective in the preamble of the SOW," and pointing to the

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

definitions of "deliverables" and "In-Scope Services" as contradicting the claimant's interpretation), *report and recommendation adopted*, 2020 WL 5105443.

### 3. Hold's claim fails on the pleadings even under its incorrect interpretation of the contract.

Hold's breach-of-contract claim fails as a matter of law *even assuming*—contrary to the plain text of the parties' agreement—that the Deliverables somehow exclude certain Account Credential Data that Hold supplied to Microsoft under the SOW. Hold claims that "Microsoft improperly and without authorization utilized stolen account credentials accessed through Hold in creating [the Active Directory Federation Service (AD FS)]." Compl. ¶ 3.16. Hold also asserts that Microsoft "improperly and without authorization utilized" the Account Credential Data "in its administration" of LinkedIn and GitHub. *Id.* ¶¶ 3.17–3.18. As an initial matter, Hold does not allege why or how Microsoft's use of the Account Credential Data with respect to AD FS, LinkedIn, or GitHub is improper. (Indeed, Hold does not dispute that Microsoft could permissibly use and retain some portion of the Account Credential Data.)

In any event, all three of the alleged uses are permissible even under Hold's misreading of the contract. Hold acknowledges that AD FS is a Microsoft "service." *Id.* ¶ 3.16. So even if the Deliverables encompassed only some subset of the Account Credential Data for "reveal[ing] and protect[ing] against threats to *services*, brands, and domains *owned by Microsoft*," as Hold incorrectly claims, the alleged use for Microsoft's AD FS service would be permissible. *See id.* ¶ 3.10 (emphasis added). Likewise, Microsoft's alleged use of the Account Credential Data "in its administration" of LinkedIn and GitHub is allowed, even under Hold's unsupported reading of the contract, because "Microsoft acquired" (i.e., owned) both companies. *Id.* ¶¶ 3.17–3.18. The LinkedIn and GitHub domains at issue are unquestionably "owned by Microsoft."[4] *Id.* ¶ 3.10.

\* \* \* \*

---

[4] To the extent Hold is trying to differentiate between "then-existing customers" and "new" Microsoft customers (*see* Compl. ¶¶ 3.13, 5.6), Hold neither explains nor offers any support for that distinction.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

The Account Credential Data at issue in Hold's Complaint is a Microsoft-owned Deliverable under the MSSA. Because Hold cannot amend the Complaint to identify a provision predicating a breach of the MSSA—indeed, the terms of the parties' contract directly contradict Hold's interpretation—Hold's claim should be dismissed with prejudice. *See Pac. Coast Feather Co. v. Ohio Mattress Co. Licensing & Components Grp.*, No. C12-1501MJP, 2013 WL 414225, at *4 (W.D. Wash. Feb. 1, 2013) ("Because Plaintiff's arguments fail based on the terms of the contract agreement alone, amendment would be futile, so dismissal is with prejudice.").

### C. Hold's claim for breach of the NDA should be dismissed because the Account Credential Data is not Hold's Confidential Information.

Hold alleges that Microsoft breached the NDA by "utilizing the accessed stolen credentials to serve Edge users, new customers from the acquisitions of LinkedIn and Github, and through the creation of AD FS." Compl. ¶ 5.6. Once again, Hold does not point to any provision of the NDA that Microsoft breached. *See id.* ¶¶ 5.1–5.7; *Brutsky*, 2018 WL 513586, at *6.

Nor could Hold amend to allege a cognizable claim based on the alleged conduct. The NDA defines "Confidential Information" in general terms as "non-public information, know-how and trade secrets in any form" that is "designated as 'confidential'" or a "reasonable person knows or reasonably should understand to be confidential"; it does not specifically address the Account Credential Data. *See* NDA § 2. The SOW, however, provides that "[a]ll Services shall be treated as *Microsoft* Confidential Information unless otherwise designated by Microsoft." SOW § 3(b) (emphasis added); *see also* NDA § 5(h) (the NDA is the "entire agreement . . . regarding confidential information" with the exception of other "contracts [between the parties] covering other specific aspects of our relationship"). To conclude that the Account Credential Data is *Hold's* Confidential Information would require the Court to ignore (1) the above language designating the Services (i.e., Deliverables) as *Microsoft* Confidential Information (*see* SOW § 3(b)), and (2) the provisions of the MSSA establishing that the Account Credential Data is a Deliverable owned by

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

Microsoft (*see supra*, Part B). That, of course, is impermissible. *See Stokes*, 2013 WL 104548, at *3 (rejecting interpretation that "renders portions of the [contract] meaningless").

Because the data at issue in Hold's Complaint is not Hold's Confidential Information, Hold's claim for breach of the NDA should be dismissed with prejudice. *See Pac. Coast Feather*, 2013 WL 414225, at *4.[5]

### D. Hold's unjust enrichment and promissory estoppel claims fail as a matter of law because the MSSA governs the conduct at issue.

The parties agree that Microsoft's rights and obligations with respect to the Account Credential Data are squarely addressed by the MSSA. *See* Compl. ¶¶ 4.1–4.8; *supra*, Part B. Because a valid contract governs, Hold's unjust enrichment and promissory estoppel claims are not cognizable and should be dismissed with prejudice.

**Unjust enrichment.** It is well settled that "[u]njust enrichment is the method of recovery for the value of the benefit retained *absent any contractual relationship*[.]" *Young v. Young*, P.3d 1258, 1262 (Wash. 2008) (emphasis added). Thus, where "a valid contract governs the rights and obligations of the parties, unjust enrichment does not apply." *Pengbo Xiao v. Feast Buffet, Inc.*, 387 F. Supp. 3d 1181, 1191 (W.D. Wash. 2019); *see also Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010) ("Under Washington law, a plaintiff who is a party to a 'valid express contract is bound by the provisions of that contract' and *may not bring a claim for unjust enrichment* for issues arising under the contract's subject matter." (emphasis added) (quoting *Chandler v. Wash. Toll Bridge Auth.*, 137 P.2d 97, 103 (Wash. 1943))). This Court routinely dismisses unjust enrichment claims on the pleadings where the parties' contract governs the conduct at issue. *See, e.g.*, *McCants v. Skyline at First Hill*, No. C21-0871-RSM, 2022 WL 3646301,

---

[5] Even assuming the Account Credential Data were Hold's Confidential Information (and it is not), Hold fails to allege a breach, at least as to its alleged use of the data for "LinkedIn and GitHub, and through the creation of AD FS." Compl. ¶ 5.6. Specifically, Hold does not allege that Microsoft disclosed Confidential Information to any third party (presumably because LinkedIn, GitHub, and AD FS are either companies owned by Microsoft or a Microsoft service). *See* NDA § 3(a); *see also id.* § 1 (allowing the parties "to disclose confidential information . . . to [their] own affiliates," i.e., "any legal entity that one of us owns").

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

1   at *3–4 (W.D. Wash. Aug. 24, 2022); *Univera, Inc. v. Terhune*, No. C09-5227 RBL, 2010 WL

2   3489932, at *4 (W.D. Wash. Aug. 31, 2010); *Ehreth v. Cap. One Servs., Inc.*, No. C08-0258RSL,

3   2008 WL 3891270, at *3 (W.D. Wash. Aug. 19, 2008).

4           Hold's unjust enrichment claim fails as a matter of law because the conduct alleged is

5   squarely governed by the parties' contract. Hold alleges that Microsoft was unjustly enriched be-

6   cause "Hold provided access to the non-Microsoft domain credentials with the expectation and

7   agreement that the credentials would be destroyed, and Microsoft wrongfully retained the creden-

8   tials[.]" Compl. ¶ 6.7. But Hold concedes that Microsoft's right to retain the Account Credential

9   Data (or, in Hold's view, lack thereof) is governed by the 2015 MSSA. *See* Compl. ¶ 4.6 (alleging

10  that "Microsoft breached the 2015 MSSA by improperly retaining customer credentials accessed

11  by Hold that did not match to the personal information of customer [sic] of Microsoft domains

12  owned at the time"); *see also BKWSPOKANE, LLC v. F.D.I.C.*, No. 12-CV-0521-TOR, 2013 WL

13  312389, at *6 (E.D. Wash. Jan. 25, 2013) (dismissing unjust enrichment claim under Rule 12(b)(6)

14  where the plaintiff did "not appear to dispute that a valid written contract exists," and in fact "ex-

15  plicitly alleges in its Complaint that the terms of that contract were breached"), *aff'd*, 663 F. App'x

16  524 (9th Cir. 2016). Hold's unjust enrichment claim should therefore be dismissed with prejudice.

17          **Promissory estoppel.** Hold's promissory estoppel claim fails for the same reason. As with

18  unjust enrichment claims, the "doctrine of promissory estoppel does not apply where a contract

19  governs" the conduct at issue. *Bardy v. Cardiac Sci. Corp.*, No. C13-0778JLR, 2013 WL 5588313,

20  at *6–7 (W.D. Wash. Oct. 10, 2013) (dismissing promissory estoppel claim because the contract

21  addressed the basis for the plaintiff's claim and "no one is arguing that the Agreement is unen-

22  forceable"); *see also Calliari v. Sargento Foods, Inc.*, Nos. C08-1111MJP, C08-1112MJP, 2009

23  WL 3784345, at *6 (W.D. Wash. Nov. 10, 2009) (dismissing promissory estoppel claim where

24  there was "no question both sides gave consideration for the [contract] and agreed to its terms"),

25  *aff'd*, 442 F. App'x 266 (9th Cir. 2011). Hold's claim assumes "that Microsoft promised Hold to

26  destroy non-Microsoft domain credentials," but, again, it is undisputed that the contract governs

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

Microsoft's ability to retain the Account Credential Data. Compl. ¶¶ 4.6, 7.2. Because amendment would be futile, the Court should dismiss Hold's promissory estoppel claim with prejudice.

### E.    Hold's tortious interference claim should be dismissed for failure to state a claim.

The Court should dismiss Hold's claim for tortious interference with a business expectancy for failure to sufficiently allege the claim's essential elements: "(1) the existence of a valid . . . business expectancy; (2) knowledge of the . . . expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the . . . expectancy; (4) that the defendant . . . interfered for an improper purpose or used improper means; and (5) resulting damage." *Univera*, 2010 WL 3489932, at *5 (citation omitted). In fact, Hold's threadbare, conclusory allegations do not support any of the first four elements of its claim.

***First***, Hold has not alleged the existence of a valid business expectancy. Hold avers that Brian Krebs was "a key member of its board of advisors" and that "Hold reasonably had business expectancies, and expected future opportunities and profits, arising from Brian Krebs' involvement with Hold." Compl. ¶ 8.2. But a mere business relationship between two parties, without more, does not constitute a "valid business expectancy." *See, e.g.*, *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1189 (W.D. Wash. 2019) (simply alleging loss of "a significant number of key personnel" did not establish a valid business expectancy under Rule 12(b)(6) because employers "do not have a business expectancy in their future relationship with their at-will employees" (cleaned up)). Rather, the plaintiff must plead sufficient facts to establish a business expectancy "of pecuniary value." *See United Fed'n of Churches, LLC v. Johnson*, 522 F. Supp. 3d 842, 853 (W.D. Wash. 2021) (citation omitted), *reconsideration denied*, No. C20-0509RAJ, 2022 WL 1093025 (W.D. Wash. Apr. 12, 2022). And "the plaintiff must have a reasonable expectation" in the future business prospect, not "merely wishful thinking." *City of Leavenworth v. Projekt Bayern Ass'n*, No. 2:22-CV-0174-TOR, 2023 WL 2354906, at *5 (E.D. Wash. Mar. 3, 2023) (cleaned up).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

Here, Hold simply observes that Mr. Krebs was a former member of its board of advisors. Compl. ¶ 3.27. That's it. Hold alleges no facts from which the Court could plausibly infer that a business expectancy of monetary value between Hold and Mr. Krebs was anything more than "wishful thinking." Hold's tortious interference claim therefore fails at the first legal stop.

**Second**, Hold fails to allege that Microsoft *knew* about a valid business expectancy (or even of any relationship) between Microsoft and Mr. Krebs. *See generally* Compl.; *United Fed'n of Churches*, 522 F. Supp. 3d at 854 (holding that plaintiff failed to satisfy the second element of its tortious interference with business expectancy claim where it formulaically alleged that "Defendants had subjective knowledge of the business relationship" (citation omitted)); *Mann L. Grp. v. Digi-Net Techs.*, Inc., No. C13-59RAJ, 2013 WL 3754808, at *3 (W.D. Wash. July 15, 2013) ("There is no allegation in the complaint that would make it plausible to conclude that Velaro was aware of Digi–Net's obligations to Plaintiffs via the [contract]."); *Pendleton v. City of Spokane*, No. 2:18-CV-0267-TOR, 2018 WL 11468676, at *5 (E.D. Wash. Oct. 12, 2018) ("Plaintiff has failed to allege facts showing . . . Defendants had knowledge of any valid business expectancy[.]"). That alone dooms Hold's claim.

**Third**, Hold does not sufficiently allege "intentional interference inducing or causing a breach or termination of the . . . expectancy." *Univera*, 2010 WL 3489932, at *5. Hold merely asserts, in conclusory fashion, that Microsoft "intentionally interfered with [Hold's] expectations." Compl. ¶ 8.4. It alleges no facts showing that Microsoft "desire[d] to bring about" the interference or knew the interference was "certain or substantially certain to occur as a result of [Microsoft's] alleged] action." *Kazia Digo, Inc. v. Smart Circle Int'l, LLC*, No. C11-544RSL, 2012 WL 836233, at *4 (W.D. Wash. Mar. 12, 2012) (citation omitted) (dismissing tortious interference claim because "Plaintiff nowhere alleges that defendant desired to disrupt plaintiff's relationship with Costco or that it knew that interference with that relationship was certain or substantially certain to result"); *Bombardier*, 383 F. Supp. 3d at 1191 ("Outside of a formulaic recitation of the tortious interference elements, Bombardier provides no factual allegations to show that any breach of this

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

business expectancy actually occurred."). Nor does Hold allege that Microsoft did anything that *caused* a termination or breach.

**Fourth**, and lastly, Hold hasn't adequately pled that Microsoft interfered for an improper purpose or used improper means, i.e., that Microsoft's alleged interference was "wrongful by some measure beyond the fact of the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession." *United Fed'n of Churches*, 522 F. Supp. 3d at 853 (citation omitted). Hold simply alleges that Microsoft's agent "tweeted false information in retaliation for Mr. Holden's factual statements regarding TrickBot." Compl. ¶ 8.4.

But Hold cannot establish improper purpose or means by recasting a deficient defamation claim as one for tortious interference. This Circuit has held that claims "for tortious interference with business relationships . . . are subject to the same first amendment requirements that govern actions for defamation." *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990). Here, Hold does not even allege the content of the statement at issue, let alone establish the elements of a defamation claim, e.g., by averring "facts giving rise to a reasonable inference that the offensive statement was provably false." *Delashaw v. Seattle Times Co.*, C18-0537JLR, 2018 WL 4027078, at *11 (W.D. Wash. Aug. 23, 2018) (cleaned up).

In sum, Hold's "formulaic recitation of the tortious interference elements" fails to survive Rule 12(b)(6). *Bombardier*, 383 F. Supp. 3d at 1191; *see also Iqbal*, 556 U.S. at 678. The claim should be dismissed.[6]

## CONCLUSION

Microsoft paid Hold to collect and supply to Microsoft Account Credential Data—a Deliverable owned by Microsoft. Because Microsoft cannot have breached the MSSA or NDA by

---

[6] To the extent Hold separately alleges tortious interference based on a Microsoft employee's alleged direction "to cease work with Hold," that theory of liability fails as well. *See* Compl. ¶ 3.26. Hold does not allege any connection between that alleged statement and Brian Krebs, nor does Hold otherwise "identify any specific customers or contracts that [the opposing party] purportedly interfered with." *See Stuc-O-Flex Int'l, Inc. v. Low & Bonar, Inc.*, No. 2:18-CV-01386-RAJ, 2019 WL 4688803, at *6 (W.D. Wash. Sept. 26, 2019).

DEFENDANT MICROSOFT'S
MOTION TO DISMISS – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

using and keeping a Microsoft-owned Deliverable, Hold's contract claims should be dismissed with prejudice. And because the parties' contract indisputably covers Microsoft's right to retain the Account Credential Data, Hold's extra-contractual unjust enrichment and promissory estoppel claims should also be dismissed without leave to amend. Lastly, the Court should dismiss Hold's formulaic tortious interference claim.

Dated: July 7, 2023

By: s/ David A. Perez
    s/ Alison R. Caditz
    David A. Perez, WSBA No. 43959
    Alison R. Caditz, WSBA No. 51530
    **Perkins Coie LLP**
    1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
    Telephone: 206.359.8000
    DPerez@perkinscoie.com
    ACaditz@perkinscoie.com

    Torryn Taylor Rodgers (*pro hac vice* forthcoming)
    **Perkins Coie LLP**
    505 Howard Street, Suite 1000
    San Francisco, CA 94105
    Telephone: 415.344.7000
    TRodgers@perkinscoie.com

    *Attorneys for Defendant Microsoft Corporation*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000