1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HOLD SECURITY LLC, a Wisconsin Limited Liability Company<br><br>        Plaintiff,<br><br>    vs.<br><br>MICROSOFT CORPORATION, a Washington Corporation,<br><br>        Defendant. | No. 2:23-cv-00899-MJP<br><br>FIRST AMENDED COMPLAINT |

Plaintiff Hold Security ("Plaintiff" and/or "Hold Security") alleges as follows:

## I.    PARTIES

1.1    Plaintiff Hold Security LLC ("Hold") is a Wisconsin Limited Liability Company with its principal place of business in Mequon, Ozaukee County, Wisconsin.

1.2    Defendant Microsoft Corporation ("Microsoft") is a Washington Corporation with its principal place of business in Redmond, King County, Washington.

## II.    JURISDICTION AND VENUE

2.1    This Court has jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction)

FIRST AMENDED COMPLAINT - 1

SCHWABE, WILLIAMSON & WYATT, P.C.<br>Attorneys at Law<br>1420 5th Avenue, Suite 3400<br>Seattle, WA  98101-4010<br>Telephone: 206-622-1711

because (1) Hold's sole member, Alex Holden, is a citizen of Wisconsin, (2) Microsoft is incorporated and has its principal place of business in Washington, and (3) the amount in controversy exceeds $75,000.

2.2     Venue is proper in this District pursuant to 28 U.S.C. § 1391, as Microsoft resides in this District, Microsoft performs regular business in this District, and as alleged with particularity below, a substantial part of the events and omissions giving rise to the claims occurred within the jurisdiction of the U.S. District Court for the Western District of Washington at Seattle.  The parties also consented via agreement to this venue and jurisdiction.

### III.     FACTS

3.1     Hold provides information security and threat intelligence services to large institutional clients.

3.2     Hold's services help large corporations protect their customers against cyber-attacks.  One of the services Hold provides is the "Credential Integrity Service."  The primary aspect of Hold's Credential Integrity Service is to recover stolen data and to provide access to the stolen data to clients (like Microsoft) who can then alert the victim customers. Further, Hold and Microsoft agreed that the protected Microsoft domains, services, and brands would be exclusively business-to-consumer ("B2C") services and brands. Hold specifically excluded business-to-business ("B2B") domains, services, and brands so that the agreement with Microsoft would not reduce Hold's potential customer base.

3.3     Hold's pricing model for its services is based on the expected benefit to its clients. In other words, Hold bases its contract price to clients on the number of customer victims that are within the scope of the agreement, the type of client (e.g. financial clients,

FIRST AMENDED COMPLAINT - 2

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

social media clients, etc.), the type of customer (e.g. individuals, businesses, etc.), and the type of data that is being recovered.  Clients, including Microsoft, are aware of the model upon which Hold bases its pricing.  This pricing model is consistent with how Hold priced its services and negotiated with Microsoft in connection with the business relationship at issue in this case.

3.4     In early 2014, Hold, through confidential business practices and its own efforts, had obtained access to over 360 million stolen account credentials on the Dark Web (the "Initial Data Set"). These stolen account credentials consisted of emails, user ids, and password combinations for a wide range of online accounts (email, investments, medical, social media, etc.).

3.5     In early 2014, Microsoft, through its employee Simon Pope ("Pope"), contacted Hold to obtain services related to recovering stolen account credentials on the Dark Web.

3.6     Through Hold's efforts, it was able to obtain access to the stolen credential data and could relay access to clients for protection of their agreed scope of customers. Hold provided the Initial Data Set to Microsoft for free subject to the provisions of a non-disclosure agreement. On February 26, 2014, Microsoft and Hold entered into a Non-Disclosure Agreement (the "NDA") in furtherance of Microsoft's requests stated above.

3.7     The NDA at Section 1 provides that the purpose of the NDA is to allow the parties "to disclose confidential information to each other, to [its] affiliates and to the other's affiliates" under the terms of the agreement.

3.8     The NDA at Section 2 defines what qualifies as "Confidential Information."

3.9     All data to which Hold has ever granted Microsoft access to, pursuant to the

FIRST AMENDED COMPLAINT - 3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

parties' agreements qualifies as "Confidential Information" under Section 2 of the NDA.

3.10    Section 3 of the NDA sets forth the parties' agreement as to how they would treat Confidential Information and the scope of their use of the data.

3.11    Microsoft later breached the NDA by misusing Confidential Information of Hold in violation of Section 3 of the NDA.

3.12    Contemporaneously with the parties' execution of the NDA, Pope sent an email to Mr. Holden (the "Pope Email").  The Pope Email summarized Microsoft's promises, representations, and intentions in connection with the parties' relationship; and, Microsoft's obligations, policies, and procedures for storing, using, and destroying the recovered stolen account credentials Hold would be providing. In the Pope Email, Mr. Pope was acting as an authorized or apparent agent of Microsoft.  Indeed, Pope was listed as the primary contact for Microsoft on the 2015 SOW (as defined *supra* ¶ 3.22) and 2015 MSSA (as defined *supra* ¶ 3.24) entered into between Hold and Microsoft.

3.13    In the Pope Email, among other things, Microsoft represents to Hold that it will "limit use of the data to activities that are designed to prevent or mitigate harm to our customers." Microsoft further represents that "the data will not be used for any other purpose." Finally, Microsoft represents: "Microsoft will ensure that after the data has been used to mitigate any harm to its customers, we will securely destroy all copies of the data."

3.14    At this time, and at all times prior to the parties entering the subsequent 2015 SOW and 2015 MSSA, upon information and belief and based on Pope's representations, Microsoft had only three separate B2C authentication systems.  First, an email provider system for services like Hotmail, Live, MSN, and the others identified in the 2015 SOW Section

FIRST AMENDED COMPLAINT - 4

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

3(b)(collectively, "Microsoft Email Services").  Second, Xbox, which allowed customers to sign up with any id ("Xbox Services").  And third, Skype, which was a separate Microsoft product with legacy sign-ins in any format including usernames and email addresses ("Skype Services").

3.15    From February 2014 to February 2015, Hold provided Microsoft access to the stolen account credentials under the NDA for free, as an act of good will toward Microsoft and its customers. Hold provided Microsoft with nearly 1.2 billion credentials subject to the NDA, free of charge.

3.16    Microsoft requested services from Hold to access stolen account credentials for certain Microsoft domains on an ongoing basis, so that Microsoft could use the data to protect Microsoft's then-existing customers.

3.17    Hold provided Microsoft with three different models for its services. The first option allowed Hold and Microsoft to share the data cryptographically (the "Cryptographic Option"). Under the Cryptographic Option, Microsoft would not receive any raw data from Hold. Rather, a proprietary program would create a unique code via algorithm for the data recovered by Hold and a separate unique code for the data of then-existing Microsoft customers. The program would then compare the created codes to identify stolen data of Microsoft customers. Microsoft did not choose the Cryptographic Option.

3.18    The second option involved Microsoft transmitting to Hold all of the data that Microsoft wished to check against Hold's Dark Web sources (the "Shared Data Option"). The Shared Data Option would allow Hold to check Microsoft's customer data for security breaches without transmitting the username/password combinations of non-Microsoft

FIRST AMENDED COMPLAINT - 5

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

accounts/users. Microsoft did not choose the Shared Data Option.

3.19    The final option involved Hold giving Microsoft access to all data that Hold had acquired (and would continue to acquire, during the term of the SOW) (the "Microsoft Access Option"). The Microsoft Access Option required Hold to transmit to Microsoft tranches of data that Microsoft would then check against its then-existing customer base. Because Microsoft customers could utilize third-party domains to access certain Microsoft products, Hold could not unilaterally segregate matched data from unmatched data on its own – this was left to Microsoft.  The Microsoft Access Option required Hold to provide Microsoft with all username/password combinations Hold had collected and required Microsoft to identify which username/password combinations belonged to Microsoft account holders (known as "matched data").

3.20    Microsoft selected the Microsoft Access Option.  Microsoft and Hold entered into negotiations with the explicit and sole objective of protecting certain Microsoft services, brands, and customers. The price of Hold's services was based on this objective and the scope of the then-existing customers for whom Hold's services would apply.  It was never part of the parties' discussions, or any contract provision, that Hold's Services could be used to enrich Microsoft by supplying it with data to protect third-parties, develop security products that would compete with Hold, or otherwise use the data for benefits beyond protecting Microsoft's then-existing customers.

3.21    Prior to entering into any contract, Microsoft required Hold to obtain a legal opinion from Hold's counsel that stated Hold's services were compliant with the law.  Upon information and belief, Hold's then-counsel confirmed to Microsoft that Hold could provide

FIRST AMENDED COMPLAINT - 6

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

PDX\140074\275266\DRE\37044514.4

Microsoft with access to the stolen credential data *provided that* Microsoft *only* used the stolen login credentials to identify the compromised username/password combinations of Microsoft customers and would destroy any data that did not match those of a Microsoft user's account (known as "unmatched data").

3.22    On February 6, 2015, Microsoft and Hold executed a Master Supplier Services Agreement (the "2015 MSSA"), which incorporates Statements of Work.

3.23    The 2015 MSSA was drafted by Microsoft using one of its standard form agreements.  The 2015 MSSA, therefore, contains many terms and provisions that are more relevant to Microsoft's relationship with its typical vendors who develop software products for Microsoft.  Hold did not "develop" anything "for Microsoft," it was a service provider.

3.24    On the same day, Microsoft and Hold executed a Statement of Work (the "2015 SOW").  The parties agreed at Section 1 ("Purpose") of the 2015 SOW that "[t]he purpose of this SOW is to set forth the specific services that Supplier will provide to Microsoft in connection with this Agreement."  Section 3(b) of the 2015 SOW, entitled "Services," provides: "Microsoft has asked [Hold] to deliver compromised 'Account Credential Data' that have been recovered by [Hold] from sites on the Internet in order to reveal and protect against threats to services, brands, and domains owned by Microsoft."  'Account Credential Data' are defined as lists of pairs of user id and password where user id is in form of a valid e-mail address [RFC 2822] only and password is non-blank."

3.25    The 2015 SOW also provides language in Section 3(b) limiting Microsoft's use of the Compromised Account Credential Data as follows: "Compromised Account Credential Data will be used to check against Microsoft's own services, brands and domains in order to

FIRST AMENDED COMPLAINT - 7

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

protect Microsoft customers."  Section 3(b) further provides that "[t]he reason for including third-party account credential data is that Microsoft customers are able to use third-party user credentials (e.g. john@contoso.com) on Microsoft brands and services."

3.26    The purpose of the parties' agreements, and specifically Hold's services, was for Microsoft to match the received stolen credentials with their own customers' account credentials (in connection with agreed-upon domains) in order to alert these customers of the compromised information.  The reason for sending Microsoft **all** data, as opposed to just the matched data, was because Microsoft chose the Microsoft Access Option and wanted to vet third-party user credentials to find stolen account credentials for Microsoft's customers using the agreed-upon domains.

3.27    As set out from the beginning by Pope – and as understood by Hold – Microsoft's right to use the data/information it received from Hold was limited.  Microsoft would compare the stolen account credential data to the login credentials of Microsoft account users to determine if any Microsoft user's credentials had been compromised.  Once a determination was made as to whether a particular compromised username/password combination matched that of a Microsoft account user, the unmatched stolen account credentials were to be immediately deleted/destroyed by Microsoft. Hold did not grant Microsoft permission to use the stolen account credentials for any other purpose.

FIRST AMENDED COMPLAINT - 8

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

PDX\140074\275266\DRE\37044514.4



3.28    Unmatched stolen credentials are credentials that do not relate to any Microsoft customers, do not belong to Microsoft, and therefore cannot be used within the scope of the parties' 2015 SOW as set out in Section 3(b) or the 2015 MSSA as set out in Section 1(h). Unmatched stolen credentials, by their very nature, cannot be used to "protect Microsoft customers" because they are not matched to Microsoft customers.   Use of this data by Microsoft is beyond the scope of the Services provided by Hold under the parties' agreements and specifically beyond Microsoft's limitation on use of those Services as agreed to by the parties in Section 3(b) of the 2015 SOW.  This scope limitation on Microsoft's use, as set out in the express terms of the 2015 SOW, was a critical aspect of the parties' understandings and agreement. Neither Microsoft nor Hold contemplated or communicated a use by Microsoft for

FIRST AMENDED COMPLAINT - 9

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

the stolen account credentials outside of the scope of the 2015 SOW – which was only to protect Microsoft's then-existing customers – other than immediate destruction of the unmatched data by Microsoft.

3.29    Section 3(b) of the 2015 SOW, at page 3, further limits the domains for which the stolen credential data could be used to the following: "microsoft, hotmail, live, outlook, msn, passport, windowslive, msncs.com, skype, nokia, xbox, bing, office365, office, iegallery, microsoftstore.com, onmicrosoft.com, microsoftonline.com, onmschina.cn, .TLD (third-party login credentials, e.g., 'contoso.com)."  As set out by the parties earlier in the 2015 SOW, "[t]he reason for including third-party account credential data is that Microsoft customers are able to use third-party user credentials (e.g. john@contoso.com) on Microsoft brands and services."

3.30    Any use by Microsoft of stolen account credentials that do not relate to (or are not matched to) Microsoft's customers, specifically those who do not utilize the domains identified in the Statements of Work (e.g. hotmail, live, outlook, etc.), is a violation of Section 3(b) of the 2015 SOW and therefore a violation of the 2015 MSSA – which incorporates "all applicable SOWs" into the agreement as set forth on page 1 of the MSSA.    Any such use would also contradict and be a breach of the promises and representations Microsoft (through Pope) made to Hold to induce Hold into entering into the parties' agreements.

3.31    Hold and Microsoft continued their respective performance pursuant to the 2015 MSSA and NDA, without amendment to these agreements, through and until at least 2020.

3.32    Beginning in or about 2018, and without Hold's prior knowledge, Microsoft

FIRST AMENDED COMPLAINT - 10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

PDX\140074\275266\DRE\37044514.4

employed an updated version of its Active Directory Federation Service (AD FS) enabling federated identity and access management. In violation of Section 3(b) of the 2015 SOW and the MSSA – which incorporates the 2015 SOW into the 2015 MSSA on page 1 - Microsoft utilized stolen account credentials accessed through Hold in creating AD FS and used it for the benefit of Microsoft itself as opposed to any Microsoft customers and/or Microsoft customers using the parties' agreed-upon domains. In particular, Microsoft utilized Hold's data to create its own B2B authentication services to compete with Hold.

3.33    Microsoft also acquired LinkedIn after the parties entered into the 2015 MSSA. LinkedIn had 200 million additional users. Microsoft at some point in or about 2018, improperly and without authorization, utilized stolen account credentials accessed through Hold in its administration of LinkedIn. This use by Microsoft violated Section 3(b) of the 2015 SOW, and consequently the MSSA which incorporates all SOWs, because it was outside the scope of the parties' agreed use of the compromised credential data and/or Hold's services. LinkedIn was not one of the parties' agreed-upon domains.

3.34    Microsoft during this period also acquired Github, which had 50 million additional users. Microsoft improperly and without authorization utilized stolen account credentials accessed through Hold in its administration of Github. This use violated Section 3(b) of the 2015 SOW, and consequently the MSSA which incorporates all SOWs, because it was outside the scope of the parties' agreed use of the stolen credential data and/or Hold's services. Github was not one of the parties' agreed-upon domains.

3.35    Microsoft's improper uses of the stolen account credentials, which were Confidential Information under the terms of the NDA, also violated the NDA at Sections 1 and

FIRST AMENDED COMPLAINT - 11

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

3.a.

3.36   Hold was not aware of Microsoft's improper use of the stolen account credentials in the AD FS, LinkedIn, and/or Github transactions, and, upon information and belief, believes there may have been additional misuse of the data outside of those delineated above.  Hold was also not aware that Microsoft was not destroying unmatched data as it promised it would.

3.37   In June of 2020, Microsoft and Hold renewed its relationship and executed an additional Master Supplier Services Agreement (the "2020 MSSA").

3.38   On July 1, 2020, Microsoft and Hold executed a Statement of Work in furtherance of the 2020 MSSA (the "2020 SOW").

3.39   In July of 2020, Microsoft representatives contacted Hold with the hopes of purchasing historical stolen account credentials – which Hold cannot do because it does not own the stolen account credentials. Hold informed Microsoft that it could not sell stolen account credentials, and that it only offered a "service" business model (as opposed to a "sales" business model). However, Microsoft unilaterally cut off those negotiations and instead chose to commandeer the historical data and continue to misuse Hold's ongoing data services beyond the agreed upon scope.

3.40   Hold then learned that Microsoft was allowing third parties to use the commandeered data, and Hold's access services, through Microsoft's web browser Edge. Unlike other services, Edge offers protection not solely to Microsoft customers or services owned by Microsoft. The intent behind Edge is to protect the internet as a whole. The use of Hold's data in Edge and AD FS completely deprives Hold of its ability to provide its own

FIRST AMENDED COMPLAINT - 12

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

PDX\140074\275266\DRE\37044514.4

security services in the B2B space.

3.41    Microsoft utilized stolen account credentials accessed through Hold in its administration of Edge without Hold's authority or consent – and without payment to Hold. This use violated Section 3(b) of the 2015 SOW, and consequently the MSSA which incorporates all SOWs, because it was outside the scope of the parties' agreed use of the stolen credential data and/or Hold's services.

3.42    In Fall of 2020, Microsoft (and the U.S. Department of Defense) attempted to disrupt or destroy a cyber-security threat known as TrickBot. Microsoft declared a premature victory over the entities that created TrickBot in October 2020.

3.43    Mr. Holden, a respected figure in the cyber security world, commented to mainstream media that while Microsoft's activities had achieved a level of success, the threat of TrickBot was not yet a "decisive victory." As Mr. Holden predicted, the TrickBot network attacked and overwhelmed U.S. Hospitals in late October 2020.

3.44    Microsoft seemingly took issue with Mr. Holden's public comments and decided to retaliate against Hold. Microsoft employee, Richard Bosovich, on behalf of Microsoft, directed Microsoft employees to cease work with Hold. This resulted in a significant loss of business for Hold.

3.45    Further, Kevin Beaumont, Microsoft's Senior Threat Intelligence Analyst, on behalf of Microsoft, tweeted false information about Hold, which resulted in Hold losing a key member of its board of advisors – Brian Krebs. This resulted in additional loss of business for Hold.

3.46    In early 2021, Hold discovered that Microsoft was using accessed stolen

FIRST AMENDED COMPLAINT - 13

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

account credentials outside of the scope allowed by the 2014 NDA, the 2015 MSSA, the 2015 SOW, the 2020 MSSA, and the 2020 SOW. At that time, Microsoft had accessed approximately 18 billion credentials through Hold's services.

3.47    In early 2021, Alex Holden, the owner of Hold, contacted Microsoft regarding Microsoft's out-of-scope use of the accessed stolen account credentials.

3.48    Microsoft exceeded the agreed scope of use set forth in Section 3(b) of the 2015 SOW, the MSSA page 1, among others. Microsoft has continued to utilize the stolen account credentials, both matched and unmatched, for its own purposes causing damages to Hold and Hold's business, among other damages.

3.49    Between 2020 and June 2022, Hold notified Microsoft that Microsoft's use of the data had exceeded the scope of the 2015 MSSA and 2015 SOW. Hold attempted to resolve this dispute in good faith by negotiating an expanded license of the data for use in Github, LinkedIn, and B2B services such as AD FS and Edge. Microsoft engaged in negotiations initially, but ultimately decided to continue to operate outside of the scope of its agreements with Hold.

## IV.    FIRST CLAIM FOR RELIEF: Breach of the 2015 MSSA

4.1    Hold incorporates all prior Paragraphs of this Complaint as if fully set forth herein.

4.2    Microsoft and Hold entered into a written contract known as the 2015 MSSA. The 2015 MSSA was renewed in 2020.

4.3    The 2015 MSSA at page 1 incorporates "any applicable SOWs" into the 2015 MSSA.

FIRST AMENDED COMPLAINT - 14

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

4.4     Pursuant to the terms of the 2015 SOW, which is incorporated into the 2015 MSSA, as well as pursuant to the parties' mutually expressed intentions in entering into the contract, Hold provided Services to Microsoft as defined in Section 3 of the 2015 SOW.

4.5     Pursuant to Section 3(b) of the 2015 SOW, the parties agreed to limit the scope of Microsoft's use of the Hold's Services.

4.6     Pursuant to the parties' mutually expressed intentions in entering into the contract, Microsoft also represented that it would destroy any accessed stolen credentials (or Services) that were beyond the scope of the 2015 SOW and/or did not match to the personal information of customers of Microsoft domains owned at that time.

4.7     Hold and Microsoft mutually assented to the terms of the 2015 MSSA.

4.8     Microsoft breached the 2015 MSSA by using Hold's Services beyond the scope of the parties' agreed use, as set forth in Section 3(b) of the 2015 SOW (which is incorporated into the 2015 MSSA).

4.9     Hold has been damaged and is entitled to monetary damages in an amount to be determined at trial.

## V.     SECOND CLAIM FOR RELIEF: Breach of the NDA

5.1     Hold incorporates all prior Paragraphs of this Complaint as if fully set forth herein.

5.2     Microsoft and Hold entered into a written contract known as the NDA.

5.3     The NDA is ongoing, and neither party has terminated the contract.

5.4     Pursuant to Section 2 of the NDA, the parties agreed what qualifies as "Confidential Information."

FIRST AMENDED COMPLAINT - 15

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

PDX\140074\275266\DRE\37044514.4

5.5     The stolen Credential Data to which Hold provided Microsoft access as part of the Services for the 2015 MSSA all qualifies as Hold's Confidential Information under Section 2 of the NDA.

5.6     Section 3 of the NDA sets forth the parties' agreement as to how they agreed to treat and use Confidential Information.

5.7     Microsoft breached the Section 3 of the NDA by, among other things, utilizing the accessed stolen account credentials to serve Edge users, new customers from the acquisitions of LinkedIn and Github, and through the creation of AD FS, which expanded protection to the B2B space beyond the scope of the agreement.

5.8     Hold has been damaged as a result of Microsoft's breach and is entitled to monetary damages in an amount to be determined at trial.

## VI.    THIRD CLAIM FOR RELIEF: Unjust Enrichment

6.1     Hold incorporates all prior Paragraphs of this Complaint as if fully set forth herein.

6.2     Hold conferred a benefit on Microsoft by, among other things, providing Microsoft access to stolen account credentials relating to non-Microsoft domains and data that did not relate to Microsoft's then-existing customers or Microsoft customers using specified domains.

6.3     Microsoft was able to filter the non-Microsoft domain credentials from the Microsoft domain credentials.

6.4     Microsoft promised to destroy the data that was not related to specified domains and/or was not related to Microsoft customers.

FIRST AMENDED COMPLAINT - 16

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

PDX\140074\275266\DRE\37044514.4

6.5     Microsoft elected to not destroy the data that was not related to specified domains and/or was not related to Microsoft customers and in fact used the data for its own benefit.

6.6     Microsoft has knowledge of the benefit received.

6.7     As Hold provided access to the unmatched data with the expectation and agreement that the credentials would not be used and would be destroyed, and Microsoft wrongfully retained the credentials for its own use and benefit, Microsoft is retaining the benefit under circumstances that makes it inequitable for them to retain them.

6.8     Microsoft has been unjustly enriched and Hold is entitled to damages arising out of that unjust enrichment.

## VII.     FOURTH CLAIM FOR RELIEF: Promissory Estoppel

7.1     Hold incorporates all prior Paragraphs of this Complaint as if fully set forth herein.

7.2     Microsoft promised Hold that it would not use, and would destroy, the data that was not related to specified domains and/or was not related to Microsoft's then-existing customers.

7.3     Microsoft could reasonably have expected to cause Hold to rely on these representations.

7.4     Hold did in fact rely on these representations.

7.5     Hold's reliance on these representations was reasonable.

7.6     As a result of that justifiable reliance, Hold has suffered damages.

7.7     Hold is entitled to damages in an amount to be determined at trial.

FIRST AMENDED COMPLAINT - 17

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

## VIII.   FIFTH CLAIM FOR RELIEF: Tortious Interference with a Business Expectancy

8.1     Hold incorporates all prior Paragraphs of this Complaint as if fully set forth herein.

8.2     Brian Krebs is a widely known and respected figure in the cybersecurity world. Mr. Krebs' role with Hold provided it with well-earned credibility.

8.3     Mr. Krebs role as a board member directly resulted in Hold entering into contracts with many of its largest, most consistent clients.

8.4     Hold expected that Krebs' would remain on the board and continue to attract future business opportunities and profits.

8.5     Hold reasonably had business expectancies, and expected future opportunities and profits, arising from Brian Krebs' involvement with Hold.

8.6     Microsoft through its agent tortiously and intentionally interfered with these expectations by retaliating against Hold for Mr. Holden's factual statements regarding TrickBot.

8.7     Microsoft tortiously and intentionally interfered with these expectations when its agent and representative (Kevin Beaumont) tweeted false information in retaliation for Mr. Holden's factual statements regarding TrickBot. Microsoft controls Mr. Beaumont's tweets as the principal of Mr. Beaumont.

8.8     Mr. Beaumont's tweet caused Mr. Krebs to resign from Hold, leading to lost revenue and profits to Hold. Because Mr. Krebs resigned from Hold as a result of Microsoft's actions, Hold lost a consistent stream of new business, upon which its business model relies.

8.9     As a result of Microsoft's tortious and intentional interference, Hold has

FIRST AMENDED COMPLAINT - 18

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

PDX\140074\275266\DRE\37044514.4

suffered damages in the form of lost revenues and profits.

8.10    Hold is entitled to damages in an amount to be determined at trial.

## IX.    SIXTH CLAIM FOR RELIEF: Breach of the Implied Covenant of Good Faith and Fair Dealing

9.1    Hold incorporates all prior Paragraphs of this Complaint as if fully set forth herein.

9.2    In the 2015 MSSA and 2015 SOW, Microsoft agreed to enter into the contracts in the spirit of protection for its customers, not as an agreement to enrich Microsoft.

9.3    The 2015 MSSA and 2015 SOW were valid contracts that established a contractual relationship between Hold and Microsoft.

9.4    In the 2015 MSSA and 2015 SOW, Microsoft promised to utilize any matched data for the express purpose of protecting its then-existing customers. Microsoft further promised that it would not retain any unmatched data. Microsoft also represented that the data would be used only to protect Microsoft's then-existing customers.

9.5    Hold's pricing models were based on the benefit received by Microsoft customers. Microsoft was aware of the bases for Hold's pricing.  At the time of entering the 2015 MSSA and 2015 SOW, Microsoft's customer base that would benefit from Hold's services was far smaller than it was subsequently – then consisting only of the Microsoft Email Services, Xbox Services, and Skype Services. Since that time, Microsoft subsequently acquired hundreds of millions of additional users through its acquisitions of LinkedIn and Github. Microsoft has also added B2B services outside of the scope of the contract, specifically through its use of Hold's data to develop AD FS and Edge.

9.6    Despite its promises both in contract and during negotiations, Microsoft made

FIRST AMENDED COMPLAINT - 19

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

no efforts to ensure that it did not improperly, and potentially illegally, retain any unmatched data. By retaining the data, Hold did not receive the benefit of Microsoft's performance – the destruction of the unmatched data ensuring that the data could not be used for another purpose.

9.7     As a result, Hold was damaged by Microsoft's retention of the data through loss of future business with Microsoft (i.e. unmatched data becomes matched data as Microsoft increases it customer base), through undervalued pricing, through Microsoft's development of products that could compete with Hold, and in other ways to be proven at trial.

9.8     Despite its promises both in contract and during negotiations, Microsoft utilized the data accessed through Hold for purposes outside of the scope of the contract. By utilizing the data to protect acquired customers, as an example, Hold did not receive the benefit of Microsoft's performance – an increased price based on the benefit received by a larger Microsoft customer base (or independent contracts with LinkedIn and Github as independent entities); and, a benefit received by Microsoft in the B2B space through its use of Hold's data in AD FS and Edge.

9.9     As a result, Hold was damaged by Microsoft's use of the data to protect future Microsoft customers through loss of additional, benefits-based pricing.

9.10    Microsoft owed Hold an obligation to perform Microsoft's contractual obligations under the Parties' contract in good faith.

9.11    Microsoft failed to perform its contractual obligations in good faith by retaining the unmatched data.

9.12    As a result of Microsoft's conduct, Hold has been damaged and is entitled to monetary damages in an amount to be proven at trial.

FIRST AMENDED COMPLAINT - 20

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

PDX\140074\275266\DRE\37044514.4

## X.     SEVENTH CLAIM FOR RELIEF: Declaratory Judgment

10.1    Hold incorporates all prior Paragraphs of this Complaint as if fully set forth herein.

10.2    A justiciable controversy exists between the Parties as to Microsoft's use of certain account credential data accessed through Hold's services.

10.3    Pursuant to RCW 7.24.010 et seq., Hold is entitled to a judgment declaring that Microsoft cannot utilize data accessed through Hold Security's service to create any competing product such as verification services through AD FS. Hold is further entitled to a judgment declaring that any data accessed through Hold Security's service by Microsoft, which does not match a Microsoft customer account at the time the relevant statement of work was executed, shall be immediately destroyed.

## XI.     REQUEST FOR RELIEF

WHEREFORE, Plaintiff Hold Security requests the following:

1.      Judgment against Defendant in an amount to be proven at trial;

2.      Pre-Judgment interest to the fullest extent allowed by law;

3.      Post-Judgment interest from the date of entry of judgment until the judgment is paid in full at the highest rate of interest allowed by law;

4.      For Plaintiff's reasonable attorney fees and costs incurred in this action to the fullest extent allowed by law; and

5.      For any other relief this Court deems just and equitable.

/ /

/ /

/ /

/ /

FIRST AMENDED COMPLAINT - 21

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

PDX\140074\275266\DRE\37044514.4

Dated this 28th day of July, 2023.

SCHWABE, WILLIAMSON & WYATT, P.C.

By:     *s/ David R. Ebel*
        David R. Ebel, WSBA #28853
        Email: debel@schwabe.com
        Davis Leigh, WSBA #58825
        Email: dbleigh@schwabe.com
        1420 5th Avenue, Suite 3400
        Seattle, WA  98101-4010
        Telephone: 206-622-1711
        Facsimile: 206-292-0460
        *Attorneys for Plaintiff*

FIRST AMENDED COMPLAINT - 22

PDX\140074\275266\DRE\37044514.4

1

## CERTIFICATE OF SERVICE

2

I certify under penalty of perjury that on the 28ᵗʰ day of July, 2023, I

3

caused the foregoing FIRST AMENDED COMPLAINT to be served on the

4

following attorneys of record via the Court's CM/ECF Electronic Filing System

5

6

7

David A. Perez, WSBA No. 43959
DPerez@perkinscoie.com

8

9

Alison R. Caditz, WSBA No. 51530
ACaditz@perkinscoie.com

10

**Perkins Coie LLP**

11

1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

12

Telephone: 206.359.8000

13

Facsimile: 206.359.9000
*Attorneys for Microsoft Corporation*

14

Torryn T. Rodgers
(pro hac vice forthcoming)
TRodgers@perkinscoie.com
**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: 415.344.7000
Facsimile: 415.344.7050
*Attorneys for Microsoft Corporation*

15

16

17

*s/ David R. Ebel*
David R. Ebel, WSBA #28853

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711