THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOLD SECURITY LLC, a Wisconsin Limited Liability Company,<br><br>        Plaintiff,<br><br>   v.<br><br>MICROSOFT CORPORATION, a Washington Corporation,<br><br>        Defendant. | No. 23-cv-899 MJP<br><br>**MICROSOFT'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>**NOTE ON MOTION CALENDAR: SEPTEMBER 8, 2023** |

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 1

    A.    The Agreements ...................................................................................................... 1

    B.    Hold seeks to limit Microsoft's ability to use and retain Microsoft-owned
        Deliverables. ........................................................................................................... 3

ARGUMENT ........................................................................................................................ 4

    A.    Legal standard ........................................................................................................ 4

    B.    Hold's claim for breach of the MSSA should be dismissed with prejudice. ........... 5

        1.    Microsoft can use and keep the Account Credential Data because it
                is a Microsoft-owned Deliverable. .............................................................. 5

        2.    Hold's attempt to narrow the Scope of the Deliverables fails as a
                matter of law. ............................................................................................. 8

        3.    Hold's claim fails on the pleadings even under its incorrect
                interpretation of the contract. ..................................................................... 10

    C.    Hold's claim for breach of the NDA should be dismissed because the
        Account Credential Data is not Hold's Confidential Information. ........................ 12

    D.    Hold's derivative contract claims should be dismissed on the pleadings. ............. 13

    E.    Hold's unjust enrichment and promissory estoppel claims fail as a matter
        of law because the MSSA governs the conduct at issue. ...................................... 15

    F.    Hold's tortious interference claim should be dismissed for failure to
        state a claim. ......................................................................................................... 17

CONCLUSION ................................................................................................................... 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................4, 20

*Badgett v. Sec. State Bank*,
116 Wn.2d 563, 807 P.2d 356 (1991) ...................................................................13, 14

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ............................................................................4

*Bardy v. Cardiac Sci. Corp.*,
No. C13-0778JLR, 2013 WL 5588313 (W.D. Wash. Oct. 10, 2013) ....................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................4

*BKWSPOKANE, LLC v. F.D.I.C.*,
No. 12-CV-0521-TOR, 2013 WL 312389 (E.D. Wash. Jan. 25, 2013), *aff'd*,
663 F. App'x 524 (9th Cir. 2016) ........................................................................16

*Bombardier v. Mitsubishi Aircraft Corp.*,
383 F. Supp. 3d 1169 (W.D. Wash. 2019) ........................................................................19, 20

*Brutsky v. Cap. One, N.A.*,
No. C17-0491 RAJ, 2018 WL 513586 (W.D. Wash. Jan. 23, 2018) ....................................10, 11

*Calliari v. Sargento Foods, Inc.*,
Nos. C08-1111MJP, C08-1112MJP, 2009 WL 3784345 (W.D. Wash. Nov. 10, 2009),
*aff'd*, 442 F. App'x 266 (9th Cir. 2011) ........................................................................16

*Chakravarty v. Peterson*,
No. C20-1576 MJP, 2021 WL 1063312 (W.D. Wash. Mar. 19, 2021) ....................................4

*Chandler v. Wash. Toll Bridge Auth.*,
137 P.2d 97 (Wash. 1943) ........................................................................15

*Cognizant Worldwide Ltd. v. Barrett Bus. Servs., Inc.*,
No. C19-1848-JCC-MLP, 2020 WL 6434835 (W.D. Wash. May 7, 2020),
*report and recommendation adopted*, No. C19-1848-JCC, 2020 WL 5105443
(W.D. Wash. Aug. 31, 2020) ........................................................................6, 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

*DDSSBOS LLC v. Boeing Co.*,
No. 22-249 MJP, 2022 WL 17403214 (W.D. Wash. Dec. 2, 2022) ....................................4, 5

*Delashaw v. Seattle Times Co.*,
C18-0537JLR, 2018 WL 4027078 (W.D. Wash. Aug. 23, 2018) ..........................................19

*Drut Techs., Inc. v. Microsoft Corp.*,
No. 2:21-CV-01653-BJR, 2022 WL 2156962 (W.D. Wash. June 15, 2022) .................7, 9, 13

*E–Z Loader Boat Trailers v. Travelers Indem.*,
726 P.2d 439 (Wash. 1986) ...................................................................................................6

*Ehreth v. Cap. One Servs., Inc.*,
No. C08-0258RSL, 2008 WL 3891270 (W.D. Wash. Aug. 19, 2008) .................................16

*Elliot Bay Seafoods, Inc. v. Port of Seattle*,
98 P.3d 491 (Wash. Ct. App. 2004) .....................................................................................10

*Johnson v. Microsoft Corp.*,
No. C06–0900RAJ, 2009 WL 1794400 (W.D. Wash. June 23, 2009) ...................................9

*Kazia Digo, Inc. v. Smart Circle Int'l, LLC*,
No. C11-544RSL, 2012 WL 836233 (W.D. Wash. Mar. 12, 2012) .....................................19

*Key Bank of Wash. v. Concepcion*,
No. C93-1737R, 1994 WL 762157 (W.D. Wash. Sept. 20, 1994) .........................................8

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 998 (9th Cir. 2018) .................................................................................................5

*King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV*,
364 P.3d 784 (Wash. Ct. App. 2015), *aff'd*, 398 P.3d 1093 (Wash. 2017) ...........................6

*Lombardi's Cucina, Inc. v. Harleysville Ins.*,
No. C09-1620-JCC, 2010 WL 3244908 (W.D. Wash. Aug. 17, 2010) ..............................6, 8

*Mann L. Grp. v. Digi-Net Techs., Inc.*,
No. C13-59RAJ, 2013 WL 3754808 (W.D. Wash. July 15, 2013 ........................................18

*Mason v. Wash. State*,
No. CV C17-186 MJP, 2017 WL 6026937 (W.D. Wash. Dec. 5, 2017) ..............................20

*McCants v. Skyline at First Hill*,
No. C21-0871-RSM, 2022 WL 3646301 (W.D. Wash. Aug. 24, 2022) ...............................15

*Microsoft Corp. v. Motorola, Inc.*,
963 F. Supp. 2d 1176 (W.D. Wash. 2013) ...........................................................................13

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

*Minnick v. Clearwire US, LLC*,
    683 F. Supp. 2d 1179 (W.D. Wash. 2010)............................................................................15

*Ozone Int'l LLC v. Wheatsheaf Grp. Ltd.*,
    No. 2:19-cv-01108-RAJ, 2021 WL 2569960 (W.D. Wash. June 23, 2021).............................14

*Pac. Coast Feather Co. v. Ohio Mattress Co. Licensing & Components Grp.*,
    No. C12-1501MJP, 2013 WL 414225 (W.D. Wash. Feb. 1, 2013).................................12, 13

*Pac. Nw. Shooting Park Ass'n v. City of Sequim*,
    144 P.3d 276 (Wash. 2006)................................................................................................18

*PBTM LLC v. Football Nw., LLC*,
    No. C19-2081-RSL, 2022 WL 670920 (W.D. Wash. Mar. 7, 2022)......................................14

*Pendleton v. City of Spokane*,
    No. 2:18-CV-0267-TOR, 2018 WL 11468676 (E.D. Wash. Oct. 12, 2018)...........................18

*Pengbo Xiao v. Feast Buffet, Inc.*,
    387 F. Supp. 3d 1181 (W.D. Wash. 2019)..........................................................................15

*Phillips-Harris v. BMW of N. Am., LLC*,
    No. 20-55612, 2022 WL 72355 (9th Cir. Jan. 7, 2022)..........................................................7

*Rekhter v. State, Dep't of Soc. & Health Servs.*,
    323 P.3d 1036 (Wash. 2014)..............................................................................................13

*Robertson v. GMAC Mortg. LLC*,
    982 F. Supp. 2d 1202 (W.D. Wash. 2013), *aff'd*, 702 F. App'x 595 (9th Cir. 2017)...............4

*Segar v. Allstate Fire & Cas. Ins.*,
    No. C21-1526JLR, 2022 WL 102035 (W.D. Wash. Jan. 11, 2022).......................................15

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................................................4

*Stokes Lawrence, P.S. v. Block 24 Seattle Ltd.*,
    No. C12-1366-JCC, 2013 WL 104548 (W.D. Wash. Jan. 8, 2013) ..................................6, 13

*Straw v. Avvo, Inc.*,
    No. C20-0294JLR, 2020 WL 5066939 (W.D. Wash. Aug. 27, 2020) ...................................17

*Stuc-O-Flex Int'l, Inc. v. Low & Bonar, Inc.*,
    No. 2:18-CV-01386-RAJ, 2019 WL 4688803 (W.D. Wash. Sept. 26, 2019) ............17, 18, 20

*SunTrust Banks, Inc. v. Be Yachts, LLC*,
    No. C18-840 MJP, 2019 WL 1787226 (W.D. Wash. Apr. 24, 2019) .....................................4

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

*Tamblyn v. Aurora Loan Servs.*,
    No. C11-5538 RJB, 2012 WL 13020096 (W.D. Wash. Apr. 30, 2012).................................13

*Unelko Corp. v. Rooney*,
    912 F.2d 1049 (9th Cir. 1990) ..........................................................................................19

*United Fed'n of Churches, LLC v. Johnson*,
    522 F. Supp. 3d 842 (W.D. Wash. 2021)......................................................................18, 19

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ..............................................................................................4

*Univera, Inc. v. Terhune*,
    No. C09-5227 RBL, 2010 WL 3489932 (W.D. Wash. Aug. 31, 2010) ....................15, 17, 18

*Young v. Young*,
    191 P.3d 1258 (Wash. 2008)............................................................................................15

**STATUTES**

17 U.S.C. § 201(b) ......................................................................................................................5

**RULES**

Fed. R. Civ. Proc. 12(b)(6) ...................................................................................................4, 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

**INTRODUCTION**

Defendant Microsoft Corporation ("Microsoft") paid Plaintiff Hold Security LLC ("Hold") to collect and supply Microsoft with "Account Credential Data" for ownership by Microsoft. Under the parties' contract, the Account Credential Data is a Deliverable (i.e., a Service) that Hold would collect and provide to Microsoft for Microsoft's use and ownership. Ignoring that plain and unambiguous language, Hold's Amended Complaint ("Complaint") alleges that Microsoft breached the parties' contract by using and retaining the Account Credential Data. But Microsoft cannot be liable for using and keeping *that which it owns pursuant to its contract with Hold*.

The unambiguous language of the contract directly contradicts Hold's allegations, which unsurprisingly rest on pre-contractual statements that were omitted from, and expressly superseded by, the parties' contract. Contrary to Hold's allegations, the contract—the only agreement that matters here—says nothing about destroying Account Credential Data, or that Microsoft may not use the Account Credential Data in certain ways. Including such language would not have made sense: Microsoft indisputably owns the Account Credential Data that Hold provided to Microsoft as a "work for hire" Service in exchange for substantial compensation.

Because Hold's breach-of-contract claims are barred by the plain language of the parties' contract, those claims should be dismissed with prejudice, as should its derivative claims for declaratory judgment and breach of the implied covenant of good faith and fair dealing. And because Hold's unjust enrichment and promissory estoppel claims concern conduct governed by the parties' contract, they also should be dismissed without leave to amend. Lastly, the Court should dismiss Hold's tortious interference claim with prejudice.

**BACKGROUND**

**A.     The Agreements**

On February 26, 2014, Microsoft and Hold entered into a Non-Disclosure Agreement ("NDA") limiting the disclosure of Confidential Information. Compl. ¶ 3.6; Declaration of Jacob Thornburgh ("Thornburgh Decl."), Ex. A (NDA). The NDA defines "Confidential Information"

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 1

as "non-public information, know-how and trade secrets in any form" that is "designated as 'confidential'" or which a "reasonable person knows or reasonably should understand to be confidential." NDA § 2(a). Confidential Information does not encompass information that was "lawfully known to the receiver of the information without an obligation to keep it confidential." *Id.* § 2(b). The NDA prohibits "disclos[ing] the other's confidential information to third parties," *id.* § 3(a), but allows each party to disclose such information "to each other" and its "own affiliates," *id.* § 1.

The next year, the parties entered into a Master Supplier Services Agreement ("MSSA"), effective February 6, 2015, in which Microsoft agreed to pay Hold for Deliverables collected by Hold and delivered to Microsoft for Microsoft's ownership. *See* Compl. ¶ 3.22; Thornburgh Decl., Ex. B (MSSA) § 3(e)(1) ("All Deliverables are 'work made for hire' for Microsoft," but, to "the extent any Deliverables do not qualify as a work made for hire," Hold "assigns all right, title and interest in and to the Deliverables, including all IP rights, to Microsoft"). "Deliverables" "means all IP or other work product developed by [Hold] . . . for Microsoft under a [Statement of Work] or as part of the Services." MSSA § 1(c). And "Services" "means the services specified in a [Statement of Work] or otherwise performed by [Hold] under this Agreement." *Id.* § 1(h); *see also id.* § 2(a) ("The parties will describe the Services in one or more [Statements of Work].").

In "accordance with the terms of the [MSSA]," the parties executed a Statement of Work ("SOW"), effective February 15, 2015. *See* Compl. ¶ 3.24; Thornburgh Decl., Ex. C. (SOW). The SOW "describes the details of the Services . . . [that Hold] will perform or deliver to Microsoft under the [MSSA] *as a work for hire*[.]" SOW § 3(a) (emphasis added). The "work for hire" Services include "provid[ing] to Microsoft all currently held Account Credential Data"—i.e., "lists of pairs of user id and password where user id is in form of a valid e-mail address . . . only and password is non-blank"—"as a one-time deliverable as a 'catchup'." *Id.* §§ 3(b), 4. Hold was also to "on a daily basis collect and deliver to Microsoft compromised Account Credential Data for [a list of specified] domains. *Id.* The SOW sets forth a "Deliverables" schedule for the "complet[ion] and deliver[y]" of "all Services to Microsoft," *id.* § 4, and a schedule for payment to Hold in

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

exchange for the Services, *id.* § 5. The SOW provides that "[a]ll Services shall be treated as Microsoft Confidential Information unless otherwise designated by Microsoft." *Id.* § 3(b).[1]

### B. Hold seeks to limit Microsoft's ability to use and retain Microsoft-owned Deliverables.

Hold sued Microsoft for breach of the MSSA based on Microsoft's use of the Microsoft-owned Deliverables.[2] Microsoft moved to dismiss the original complaint (Dkt. 12), and Hold amended as of right (Dkt. 17). Microsoft withdrew its motion to dismiss as moot. Dkt. 20.[3]

The now-operative Complaint alleges that "Microsoft breached the 2015 MSSA by using Hold's Services beyond the scope of the parties' agreed use[.]" Compl. ¶ 4.8. Specifically, Hold claims that "[a]ny use by Microsoft of stolen account credentials that do not relate to (or are not matched to) Microsoft's customers, specifically those who do not utilize the domains identified in the Statements of Work (e.g. hotmail, live, outlook, etc.), is a violation of Section 3(b) of the 2015 SOW and therefore a violation of the 2015 MSSA[.]" *Id.* ¶ 3.30. Hold alleges that Microsoft violated the MSSA in connection with Active Directory Federation Service ("AD FS"), LinkedIn, and Github by using the Account Credential Data beyond the parties' list of "agreed-upon domains." *Id.* ¶¶ 3.32–3.34. Hold further asserts that Microsoft breached the NDA by using Microsoft's own Confidential Information in connection with LinkedIn, Github, Edge, and ADFS. *Id.* ¶ 5.7. And Hold brings two derivative breach-of-contract claims—breach of the implied covenant of good

---

[1] In 2020, the parties "executed an additional Master Supplier Services Agreement (the '2020 MSSA')" and "a Statement of Work in furtherance of the 2020 MSSA (the '2020 SOW')." Compl. ¶¶ 3.37–3.38. Because Hold does not allege a breach of the 2020 MSSA or 2020 SOW, this Motion does not address those agreements, and Microsoft refers to the 2015 MSSA and 2015 SOW simply as "MSSA" and "SOW."

[2] Hold sued Microsoft in the Superior Court of the State of Washington for King County. *See* Dkt. 1-2. Microsoft removed to this Court on June 14, 2023. *See* Dkt. 1.

[3] Hold filed an opposition to Microsoft's already-moot Motion to Dismiss the original complaint. Dkt. 18. Hold's opposition (which was moot at the time it was filed) was based on the First Amended Complaint, including two new claims alleged therein. *Id.*

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

faith and fair dealing, and a request for a declaratory judgment adopting its unsupported interpretation of the MSSA. *Id.* ¶¶ 9.1–10.3.

Hold also asserts two extra-contractual claims (unjust enrichment and promissory estoppel) based on the same alleged conduct that forms Hold's breach-of-contract claims. *Id.* ¶¶ 6.1–7.7; *see id.* ¶¶ 4.4, 4.6. Lastly, Hold claims that Microsoft tortiously interfered with an unidentified business expectancy related to a former board member who allegedly left Hold when Microsoft released undisclosed "false information." *Id.* ¶¶ 8.1–8.10.

## ARGUMENT

### A.    Legal standard

Rule 12(b)(6) provides for dismissal based on "the lack of a cognizable legal theory." *Robertson v. GMAC Mortg. LLC*, 982 F. Supp. 2d 1202, 1206 (W.D. Wash. 2013) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)), *aff'd*, 702 F. App'x 595 (9th Cir. 2017). Dismissal is also "appropriate where a complaint fails to allege 'enough facts to state a claim to relief that is plausible on its face.'" *SunTrust Banks, Inc. v. Be Yachts, LLC*, No. C18-840 MJP, 2019 WL 1787226, at *1 (W.D. Wash. Apr. 24, 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court accepts well-pled facts as true, it need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Chakravarty v. Peterson*, No. C20-1576 MJP, 2021 WL 1063312, at *2 (W.D. Wash. Mar. 19, 2021) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing a motion to dismiss, the Court may consider a document incorporated by reference into the complaint—even if it is not attached—"if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *DDSSBOS LLC v. Boeing Co.*, No. 22-249 MJP, 2022 WL 17403214, at *2 (W.D. Wash. Dec. 2, 2022) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). The doctrine thus "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

1    documents that weaken—or doom—their claims." *Id.* (citing *Khoja v. Orexigen Therapeutics, Inc.*,

2    899 F.3d 998, 1002 (9th Cir. 2018)).

3           Here, the NDA, MSSA, and SOW are incorporated into the Complaint by reference, as

4    Hold refers to those documents extensively and they underlie Hold's breach-of-contract claims.

5    *See e.g.*, Compl. ¶¶ 3.6, 3.22, 3.24, 3.31, 4.1–5.8; *DDSSBOS*, 2022 WL 17403214, at *3 (contracts

6    underlying plaintiff's claims were incorporated by reference).

7           **B.      Hold's claim for breach of the MSSA should be dismissed with prejudice.**

8                      **1.      Microsoft can use and keep the Account Credential Data because**
9                                **it is a Microsoft-owned Deliverable.**

10          Hold's claim for breach of the MSSA fails as a matter of law for the fundamental reason

11   that Microsoft unambiguously owns the Account Credential Data provided by Hold as a "work for

12   hire" Deliverable under the parties' contract, which does not limit or otherwise condition Mi-

13   crosoft's ability to use or keep the data. The plain language of the MSSA, which Hold largely

14   ignores, directly contradicts Hold's allegations.

15          The Account Credential Data that Hold provided to Microsoft under the MSSA is a Deliv-

16   erable *that Microsoft owns*. Microsoft agreed to pay Hold to collect and supply specified Deliver-

17   ables for Microsoft. *See generally* MSSA & SOW. To that end, the MSSA unambiguously pro-

18   vides that "*[a]ll Deliverables are 'work made for hire' for Microsoft* under applicable copyright

19   law*.*" MSSA § 3(e)(1) (emphasis added). In other words, Microsoft is the author of the work under

20   the Copyright Act and "owns all of the rights comprised in th[at] copyright." 17 U.S.C. § 201(b).

21   The "Deliverables" are "all IP or other work product developed by [Hold] . . . for Microsoft under

22   a SOW or as part of the Services." *Id.* § 1(c). Consistent with the MSSA, the SOW describes the

23   "Services" that Hold "will perform or deliver to Microsoft under the [MSSA] *as a work for hire*."

24   SOW § 3(a) (emphasis added). The "Services" include "provid[ing] to Microsoft *all currently held*

25   *Account Credential Data as a one-time deliverable* as a 'catch-up,'" and "*provid[ing] compro-*

26   *mised Account Credential Data on a daily basis*." *Id.* §§ 2(b), 4 (emphasis added); *see also* Compl.

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 5

1   ¶ 3.23 (acknowledging that Hold "was a service provider"); *id.* ¶ 4.4 ("Hold provided Services to

2   Microsoft [under] Section 3 of the 2015 SOW.").

3          Under the plain and unambiguous terms of the MSSA and SOW, the Account Credential

4   Data that Hold "deliver[ed] to Microsoft" is a "work for hire" Service (i.e., Deliverable)—in fact,

5   *the only Service* under the MSSA, for which Hold received substantial payment. *See id.* §§ 2(b),

6   4, 5. The Complaint conveniently disregards those key contract terms, which cannot be reconciled

7   with Hold's claims. *See Cognizant Worldwide Ltd. v. Barrett Bus. Servs., Inc.*, No. C19-1848-

8   JCC-MLP, 2020 WL 6434835, at *4 (W.D. Wash. May 7, 2020) (dismissing breach-of-contract

9   claim where terms of SOW "contradict[ed]" the plaintiff's allegations), *report and recommenda-*

10  *tion adopted*, No. C19-1848-JCC, 2020 WL 5105443 (W.D. Wash. Aug. 31, 2020).

11         Indeed, basic principles of contract interpretation preclude Hold's interpretation of the

12  MSSA. Reading the contract to bar Microsoft from retaining or using the Account Credential Data

13  would render superfluous the backbone of the parties' contract: Microsoft's "Ownership of Deliv-

14  erables," i.e., the "work for hire" Services that Hold provided to Microsoft in exchange for com-

15  pensation. MSSA § 3(e); SOW § 3(a). Microsoft cannot both own the Deliverables and be barred

16  from keeping or using them. *See Stokes Lawrence, P.S. v. Block 24 Seattle Ltd.*, No. C12-1366-

17  JCC, 2013 WL 104548, at *3 (W.D. Wash. Jan. 8, 2013) ("Plaintiff's interpretation fails because

18  it . . . renders portions of the [contract] meaningless."). Likewise, Hold's assertion that Microsoft

19  cannot retain or use Account Credential Data that Microsoft owns would impermissibly result in

20  absurd consequences. *See Lombardi's Cucina, Inc. v. Harleysville Ins.*, No. C09-1620-JCC, 2010

21  WL 3244908, at *3 (W.D. Wash. Aug. 17, 2010) ("The Court interprets contracts to avoid absurd

22  results." (citing *E–Z Loader Boat Trailers v. Travelers Indem.*, 726 P.2d 439, 443 (Wash. 1986))).

23         Hold's interpretation of the MSSA is also inconsistent with two other provisions concern-

24  ing the Deliverables. *See King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-*

25  *Kemper, JV*, 364 P.3d 784, 802 (Wash. Ct. App. 2015) (courts interpret contract language in light

26  of other provisions), *aff'd*, 398 P.3d 1093 (Wash. 2017).

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

***First***, the parties narrowed the scope of the Deliverables in one respect but did *not* do so in identifying Account Credential Data as a Deliverable. Specifically, the SOW provides that Hold's "proprietary methods for gathering Account Credential Data from sites on the Internet shall not be considered Supplier IP incorporated into the Deliverables." SOW § 3(b)(2). That provision clarifies that the parties knew how to draft a carveout from the Deliverables, and they did so expressly as to Hold's "proprietary methods for *gathering*" the Account Credential Data. *See id.* (emphasis added). The absence of any similar language addressing the Account Credential Data *itself* (i.e., that some subset of that data "shall not be" considered part of the Deliverables) underscores what the MSSA and SOW already make clear: that the Deliverables include the Account Credential Data that Hold collected at Microsoft's request, to Microsoft's specifications, for Microsoft's ownership. *See Phillips-Harris v. BMW of N. Am., LLC*, No. 20-55612, 2022 WL 72355, at *2 (9th Cir. Jan. 7, 2022) ("BMW failed to demonstrate that permitting it to compel arbitration would be 'consistent with the objectives of the contract and the reasonable expectations of the contracting parties'" because the "clause does not mention BMW even though the parties knew how to give enforcement powers to non-signatories").

***Second***, the parties' contract gives Microsoft an irrevocable and unlimited license to use *even Hold's IP*. The MSSA provides that, to the extent Hold's IP is incorporated into the Deliverables, Hold "grants Microsoft a worldwide, nonexclusive, perpetual, irrevocable, royalty-free, fully paid up right and license" to, among other things, "use, reproduce, format, modify, and create derivative works of the applicable Supplier IP[.]" MSSA § 3(d); *cf. Drut Techs., Inc. v. Microsoft Corp.*, No. 2:21-CV-01653-BJR, 2022 WL 2156962, at *4–5 (W.D. Wash. June 15, 2022) (holding that Microsoft's "worldwide, nonexclusive, perpetual, irrevocable, royalty-free, fully paid-up right and license" granted under MSSA "could not be revoked under any circumstances, even if there is a material breach of the agreement" (cleaned up)).

Although Hold does not allege that any Supplier IP was incorporated into the Deliverables, and thus concedes Microsoft simply owns the Deliverables without the need for a license, the

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

provision highlights the unreasonableness of Hold's argument. It would be nonsensical for Microsoft to have a "perpetual, irrevocable," and unfettered right to "use" *Hold-owned IP* incorporated into the Deliverables, yet be barred from using or retaining *Microsoft-owned* Account Credential Data that does not include Hold IP. *See Lombardi's Cucina*, 2010 WL 3244908, at *3 (rejecting contract interpretation that would lead to absurd results).[4]

### 2. Hold's attempt to narrow the Scope of the Deliverables fails as a matter of law.

Hold alleges that Microsoft can only use and keep Account Credential Data that matches Microsoft's "then-existing customers" and "agreed-upon domains." *See* Compl. ¶¶ 3.16, 3.26. Unsurprisingly, Hold's support for that assertion (to the extent it has any) rests on irrelevant *pre-contractual statements* rather than the plain text of the parties' agreement. Neither the MSSA nor the SOW limits Microsoft's right to use or keep the Deliverables.

Hold relies heavily on a 2014 pre-contractual e-mail from a Microsoft employee indicating that Microsoft will "limit use of the data to activities that are designed to prevent or mitigate harm to our customers," that "the data will not be used for any other purpose," and that Microsoft will thereafter "securely destroy all copies of the data." *Id.* ¶¶ 3.5, 3.12–3.14, 3.27.

**This is a distraction.** The *2014* "Pope E-mail" can have no bearing on the parties' rights and obligations under the *2015* MSSA, which (1) notably does *not* contain the commitments set forth in the e-mail, and (2) expressly "supersedes all prior and contemporaneous communications, whether written or oral, regarding the subject matter covered in this Agreement." MSSA § 12(g); *see Key Bank of Wash. v. Concepcion*, No. C93-1737R, 1994 WL 762157, at *4 (W.D. Wash. Sept. 20, 1994) (rejecting breach-of-contract claim based on extra-contractual commitments "due to the language of the integration clause," which "clearly stated that it superseded all prior

---

[4] Hold alleges that it "attempted to resolve this dispute in good faith by negotiating an expanded license of the data[.]" Compl. ¶ 3.49. Again, Hold did not grant Microsoft a "license" to use the Account Credential Data; it unambiguously accepted payment in exchange for providing Microsoft the Account Credential Data as a "work for hire" Service. SOW § 3(a). No license is necessary or possible, since Microsoft owns the data.

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

1  understandings . . . and that the prior agreements were no longer of legal effect"); *see also Drut v.*

2  *Microsoft*, 2022 WL 2156962, at *4 (declining to consider extrinsic evidence that "flatly contra-

3  dicts the MSSA's clear language"). For the same reason, other alleged pre-contractual discus-

4  sions—for example, a statement by Hold's former counsel alleged "on information and belief"—

5  are irrelevant to determining the parties' unambiguous rights and obligations in the MSSA. *See,*

6  *e.g.*, Compl. ¶¶ 3.2–3.3, 3.16–3.21.

7          Hold attempts to bolster its arguments by quoting general language from the SOW address-

8  ing Microsoft's stated objective for the Deliverables: "Microsoft has asked [Hold] to deliver com-

9  promised 'Account Credential Data' that have been recovered by [Hold] from sites on the Internet

10  in order to reveal and protect against threats to services, brands and domains owned by Microsoft."

11  *Id.* ¶ 3.24 (quoting SOW § 3(b)). Hold also notes that "Compromised Account Credential Data

12  will be used to check against Microsoft's own services, brands and domains in order to protect

13  Microsoft customers," and that the "reason for including third-party account credential data is that

14  Microsoft customers are able to use third-party user credentials (e.g. john@contoso.com) on Mi-

15  crosoft brands and services." *Id.* ¶ 3.25 (quoting SOW § 3(b)).

16          But Microsoft's stated objective for using the Deliverables, once it received and took own-

17  ership of them, does not limit what is encompassed in the Deliverables as a threshold matter. *See,*

18  *e.g.*, MSSA § 3(e) & SOW §§ 2(b), 3 (Hold's "work for hire" Services, i.e., "work made for hire"

19  Deliverables, include "provid[ing] to Microsoft all currently held Account Credential Data as a

20  one-time deliverable as a 'catch-up,'" and "provid[ing] compromised Account Credential Data on

21  a daily basis"). Critically, the above SOW language does not *prohibit* Microsoft from keeping or

22  using the Account Credential Data in any way, nor does it *require* Microsoft to use the data exclu-

23  sively in any one way—limitations that would, as discussed above, be irreconcilable with the con-

24  tract's key provisions. *See Johnson v. Microsoft Corp.*, No. C06–0900RAJ, 2009 WL 1794400

25  (W.D. Wash. June 23, 2009) (holding as a matter of law that a contract providing that Microsoft

26  "will use" a certain technology for a given purpose "does not prohibit" Microsoft from also using

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 9

a different technology for that same purpose when the contract is silent on the other technology); *cf. Cognizant Worldwide*, 2020 WL 6434835, at *4 (recommending dismissal of a breach-of-contract claim that relied on "stated objective in the preamble of the SOW," and pointing to the definitions of "deliverables" and "In-Scope Services" as contradicting the claimant's interpretation), *report and recommendation adopted*, 2020 WL 5105443.

### 3.     Hold's claim fails on the pleadings even under its incorrect interpretation of the contract.

Hold alleges Microsoft breached the MSSA by using the Account Credential Data in connection with LinkedIn, Github, and AD FS. Compl. ¶¶ 3.32–34. That claim fails as a matter of law *even assuming*—contrary to the plain text of the parties' agreement—that the Deliverables somehow limit Microsoft's ability to use and keep the Account Credential Data that Hold supplied to Microsoft as a "work for hire" Service.

**LinkedIn and Github.** Hold alleges that Microsoft used the Account Credential Data in connection with LinkedIn and Github, companies "acquired" by Microsoft. *Id.* ¶¶ 3.33–3.34. Recognizing that such use unquestionably involves "Microsoft's own services, brands and domains," and also "protect[s] Microsoft customers," Hold asserts that LinkedIn and Github were not "one of the parties' agreed-upon domains." *Id.* Hold does not even try to identify any contract language limiting Microsoft's use to a list of "agreed-upon domains" because there is none. *See Brutsky v. Cap. One, N.A.*, No. C17-0491 RAJ, 2018 WL 513586, at *6 (W.D. Wash. Jan. 23, 2018) (a "breach of contract claim must point to a provision of the contract that was breached" (citing, *e.g.*, *Elliot Bay Seafoods, Inc. v. Port of Seattle*, 98 P.3d 491, 494 (Wash. Ct. App. 2004))). To the contrary, the SOW addresses particular domains only in identifying what *Hold* must provide to Microsoft: "***Supplier*** will on a daily basis collect and deliver to Microsoft compromised Account Credential Data for the following [list of] domains: . . . ." SOW § 3(b) (emphasis added). Likewise, Hold's belief that Microsoft could only use the Account Credential Data to protect "then-existing"

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 10

1    customers (as opposed to "acquired" customers) has absolutely no support in the contract (or, for

2    that matter, elsewhere). Compl. ¶¶ 3.28, 9.8; *see Brutsky*, 2018 WL 513586, at *6.

3        **AD FS.** Hold also claims that Microsoft breached the MSSA by using the Account Cre-

4    dential Data when it created AD FS. *Id.* ¶ 3.32. But Hold acknowledges that AD FS is a Microsoft

5    "Service" benefiting customers—a permissible use even under Hold's erroneous interpretation of

6    the SOW. *See* SOW § 3(b) (referring to Microsoft's objective of utilizing the Account Credential

7    Data to "protect against threats to *services*, brands and domains" (emphasis added)). Attempting

8    to expand the scope of the contract even beyond its own misreading of section 3(b), Hold alleges

9    that Microsoft created AD FS "for the benefit of Microsoft itself as opposed to any Microsoft

10   customers and/or Microsoft customers using the parties' agreed-upon domains," and that AD FS

11   was instead a "B2B authentication service[]" rather than a business-to-consumer (B2C) service.

12   *Id.* ¶¶ 3.2, 3.32. In other words, Hold recognizes that AD FS is a Service used by Microsoft cus-

13   tomers but tries to narrow the scope of "customers" to "then existing" individual customers using

14   only particular domains. Again, there is *no contract language* supporting that interpretation. There

15   is no set of "agreed-upon domains" that Microsoft could use (merely a list of domains for which

16   *Hold* was to supply data to Microsoft as a "work for hire" Service), nor is there any mention (let

17   alone distinction) in the contract of existing versus future customers or of business versus individ-

18   ual customers. *See e.g.*, *id.* ¶ 3.2 (alleging, without any contractual or other support, that "Hold

19   and Microsoft agreed that the protected Microsoft domains, services, and brands would be exclu-

20   sively . . . B2C"). In sum, even under Hold's unwarranted read of the SOW, Microsoft could per-

21   missibly use the Account Credential Data in connection with Microsoft services, brands, and do-

22   mains like AD FS, LinkedIn, and Github.

23                                    * * * *

24       The Account Credential Data at issue in Hold's Complaint is a Microsoft-owned Deliver-

25   able (i.e., "work for hire" Service) under the MSSA. That conclusion is compelled by unambiguous

26   language in both the MSSA and the SOW. Because Hold cannot amend the Complaint to allege a

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 11

1    breach of the MSSA—indeed, the terms of the parties' contract directly contradict Hold's inter-

2    pretation—Hold's contract claim should be dismissed with prejudice. *See Pac. Coast Feather Co.*

3    *v. Ohio Mattress Co. Licensing & Components Grp.*, No. C12-1501MJP, 2013 WL 414225, at *4

4    (W.D. Wash. Feb. 1, 2013) ("Because Plaintiff's arguments fail based on the terms of the contract

5    agreement alone, amendment would be futile, so dismissal is with prejudice.").

6    **C.    Hold's claim for breach of the NDA should be dismissed because the**
        **Account Credential Data is not Hold's Confidential Information.**

7    

8    Hold alleges Microsoft breached the NDA by "utilizing the accessed stolen account cre-

9    dentials to serve Edge users, new customers from the acquisitions of LinkedIn and Github, and

10   through the creation of AD FS[.]" Compl. ¶ 5.7. In Hold's view, Microsoft breached Section 3 of

11   the NDA, which concerns the disclosure of Confidential Information, because "[a]ll data to which

12   Hold has ever granted Microsoft access to, pursuant to the parties' agreement qualifies as 'Confi-

13   dential Information' under Section 2 of the NDA." *Id.* ¶¶ 3.9–3.11. Again, Hold's claim is barred

14   by unambiguous language in the SOW.

15   The NDA defines "Confidential Information" in general terms as "non-public information,

16   know-how and trade secrets in any form" that is "designated as 'confidential'" or a "reasonable

17   person knows or reasonably should understand to be confidential"; it does not specifically address

18   the Account Credential Data. *See* NDA § 2. The SOW, however, provides that "[a]ll Services shall

19   be treated as ***Microsoft*** Confidential Information unless otherwise designated by Microsoft." SOW

20   § 3(b) (emphasis added); *see also* NDA § 5(h) (the NDA is the "entire agreement . . . regarding

21   confidential information" with the exception of other "contracts [between the parties] covering

22   other specific aspects of our relationship").

23   To conclude that the Account Credential Data is *Hold's* Confidential Information would

24   require the Court to ignore (1) the language designating the Services, which includes the Account

25   Credential Data, as *Microsoft* Confidential Information (*see* SOW § 3(b)), and (2) the provisions

26   of the MSSA establishing that the Account Credential Data is a "work for hire" Service, i.e.,

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

1  Deliverable, owned by Microsoft (*see supra*, Part B). That, of course, is impermissible. *See Stokes*,

2  2013 WL 104548, at *3 (rejecting interpretation that "renders portions of the [contract] meaning-

3  less"). Because the data at issue in Hold's Complaint is Microsoft's Confidential Information,

4  Hold's claim for breach of the NDA should be dismissed with prejudice. *See Pac. Coast Feather*,

5  2013 WL 414225, at *4.[5]

6      **D.**    **Hold's derivative contract claims should be dismissed on the pleadings.**

7      Hold raises two derivative breach-of-contract claims: (1) breach of the implied covenant

8  of good faith and fair dealing, and (2) a request for a declaratory judgment limiting Microsoft's

9  ability to use and keep the Account Credential Data. Both claims fail as a matter of law and should

10  be dismissed without leave to amend.

11      **Implied covenant.** Because the implied covenant of good faith and fair dealing requires

12  the parties to "perform in good faith the obligations imposed by their [contractual] agreement," it

13  "arises only in connection with terms agreed to by the parties." *Badgett v. Sec. State Bank*, 807

14  P.2d 356, 360 (Wash. 1991); *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041

15  (Wash. 2014). The implied covenant therefore "cannot contradict express terms in a contract, nor

16  can it be used to interpret contractual provisions in a manner that expands the scope of their plain

17  meaning." *Drut v. Microsoft*, 2022 WL 2156962, at *8 (cleaned up); *Microsoft Corp. v. Motorola,*

18  *Inc.*, 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013) (there "is no 'free-floating' duty of good

19  faith and fair dealing that injects substantive terms into the parties' contract"). In short, "the duty

20  of good faith does not trump contract terms." *Tamblyn v. Aurora Loan Servs.*, No. C11-5538 RJB,

21  2012 WL 13020096, at *3 (W.D. Wash. Apr. 30, 2012).

22
23  [5] Even assuming the Account Credential Data were not Microsoft Confidential Information (and it is), Hold fails to allege a breach. Specifically, Hold does not allege that Microsoft unlawfully

24  disclosed Confidential Information to third parties vis-à-vis LinkedIn, GitHub, or AD FS, presumably because those are either companies owned by Microsoft or a Microsoft service. *See* NDA

25  § 3(a); *id.* § 1 (allowing the parties "to disclose confidential information . . . to [their] own affiliates," i.e., "any legal entity that one of us owns"). Hold also baldly alleges Microsoft "was allowing

26  third parties to use" the Account Credential Data "through Microsoft's web browser Edge," Compl. ¶ 3.40, but it avers no facts from which the Court can reasonably reach that conclusion.

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 13

As discussed above, the MSSA does not bar or limit Microsoft from keeping or using the Account Credential Data, nor does the NDA. *See supra*, Part B. And since Microsoft had no contractual duty to delete or refrain from using the data, it cannot have breached the implied covenant by allegedly failing to do so. *See PBTM LLC v. Football Nw., LLC*, No. C19-2081-RSL, 2022 WL 670920, at *3 (W.D. Wash. Mar. 7, 2022) ("The implied duty of good faith is derivative, in that it applies to the performance of specific contract obligations. If there is no contractual duty, there is nothing that must be performed in good faith."). Hold cannot circumvent the parties' contract by asserting that Microsoft is liable for breaching the implied covenant.

Even if Hold could state a cognizable breach-of-contract claim, its implied covenant claim would still fail. "As a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms." *Ozone Int'l LLC v. Wheatsheaf Grp. Ltd.*, No. 2:19-cv-01108-RAJ, 2021 WL 2569960, at *8 (W.D. Wash. June 23, 2021) (quoting *Badgett*, 807 F.2d at 362 (dismissing duplicative breach-of-contract claim)). Hold simply alleges that Microsoft breached the implied covenant by failing to delete certain data and using that data. *See* Compl. ¶¶ 9.1–9.12. In other words, its implied covenant claim is entirely duplicative of its breach-of-contract claim.

**Declaratory judgment.** Hold's declaratory judgment claim should also be dismissed as merely derivative of its deficient breach-of-contract claim. Hold seeks a declaratory judgment that (1) "Microsoft cannot utilize data accessed through Hold Security's service to create any competing product such as verification services through AD FS," and (2) "any data accessed through Hold Security's service by Microsoft, which does not match a Microsoft customer account at the time the relevant statement of work was executed, shall be immediately destroyed." *Id.* ¶ 10.3. The claim should be dismissed because, as set forth above, the MSSA does not even mention "competing product[s]," then-existing customers, or the destruction of data, let alone limit Microsoft's ability to use or keep the Account Credential Data in any way. To the contrary, Microsoft owns the "Services" Hold "deliver[ed]" to Microsoft under the [MSSA] as a work for hire." SOW § 3(b).

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

The Court should also dismiss Hold's declaratory judgment claim for the independent reason that the relief sought is merely duplicative of its breach-of-contract claim. *Segar v. Allstate Fire & Cas. Ins.*, No. C21-1526JLR, 2022 WL 102035, at *8 (W.D. Wash. Jan. 11, 2022) ("Requests for declaratory judgment orders that merely impose the remedies provided for in other claims are duplicative and may be dismissed on that basis; declaratory relief is not cognizable as an independent cause of action in such circumstances." (cleaned up) (collecting cases)).

### E.   Hold's unjust enrichment and promissory estoppel claims fail as a matter of law because the MSSA governs the conduct at issue.

The parties agree that Microsoft's rights and obligations with respect to the Account Credential Data are squarely addressed by the MSSA. *See* Compl. ¶¶ 4.1–4.9; *id.* ¶ 9.3 ("The 2015 MSSA and 2015 SOW were valid contracts that established a contractual relationship between Hold and Microsoft."); *supra*, Part B. Because a valid contract governs, Hold's unjust enrichment and promissory estoppel claims are not cognizable and should be dismissed with prejudice.

**Unjust enrichment.** It is well settled that "[u]njust enrichment is the method of recovery for the value of the benefit retained *absent any contractual relationship*[.]" *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) (emphasis added). Thus, where "a valid contract governs the rights and obligations of the parties, unjust enrichment does not apply." *Pengbo Xiao v. Feast Buffet, Inc.*, 387 F. Supp. 3d 1181, 1191 (W.D. Wash. 2019); *see also Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010) ("Under Washington law, a plaintiff who is a party to a 'valid express contract is bound by the provisions of that contract' and *may not bring a claim for unjust enrichment* for issues arising under the contract's subject matter." (emphasis added) (quoting *Chandler v. Wash. Toll Bridge Auth.*, 137 P.2d 97, 103 (Wash. 1943))). This Court routinely dismisses unjust enrichment claims on the pleadings where the parties' contract governs the conduct at issue. *See, e.g., McCants v. Skyline at First Hill*, No. C21-0871-RSM, 2022 WL 3646301, at *3–4 (W.D. Wash. Aug. 24, 2022); *Univera, Inc. v. Terhune*, No. C09-5227 RBL, 2010 WL

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

1    3489932, at \*4 (W.D. Wash. Aug. 31, 2010); *Ehreth v. Cap. One Servs., Inc.*, No. C08-0258RSL,

2    2008 WL 3891270, at \*3 (W.D. Wash. Aug. 19, 2008).

3         Hold's unjust enrichment claim fails as a matter of law because the conduct alleged is

4    squarely governed by the MSSA, which Hold acknowledges is "valid." Compl. ¶ 9.3. Hold alleges

5    that Microsoft was unjustly enriched because "Hold provided access to the unmatched data with

6    the expectation and agreement that the credentials would not be used and would be destroyed,"

7    and Microsoft "elected not to destroy the data[.]" *Id.* ¶¶ 6.5, 6.7. But Hold concedes that Mi-

8    crosoft's right to retain the Account Credential Data (or, in Hold's view, lack thereof) is governed

9    by the 2015 MSSA. *See id.* ¶ 4.6 (alleging a breach of MSSA based on Microsoft's alleged agree-

10   ment to "destroy any accessed stolen credentials (or Services) that were beyond the scope of the

11   2015 SOW"); *see also BKWSPOKANE, LLC v. F.D.I.C.*, No. 12-CV-0521-TOR, 2013 WL

12   312389, at \*6 (E.D. Wash. Jan. 25, 2013) (dismissing unjust enrichment claim under Rule 12(b)(6)

13   where the plaintiff did "not appear to dispute that a valid written contract exists," and in fact "ex-

14   plicitly alleges in its Complaint that the terms of that contract were breached"), *aff'd*, 663 F. App'x

15   524 (9th Cir. 2016). Hold's unjust enrichment claim should therefore be dismissed with prejudice.

16        **Promissory estoppel.** Hold's promissory estoppel claim fails for the same reason. As with

17   unjust enrichment claims, the "doctrine of promissory estoppel does not apply where a contract

18   governs" the conduct at issue. *Bardy v. Cardiac Sci. Corp.*, No. C13-0778JLR, 2013 WL 5588313,

19   at \*6–7 (W.D. Wash. Oct. 10, 2013) (dismissing promissory estoppel claim because the contract

20   addressed the basis for the plaintiff's claim and "no one is arguing that the Agreement is unen-

21   forceable"); *see also Calliari v. Sargento Foods, Inc.*, Nos. C08-1111MJP, C08-1112MJP, 2009

22   WL 3784345, at \*6 (W.D. Wash. Nov. 10, 2009) (dismissing promissory estoppel claim where

23   there was "no question both sides gave consideration for the [contract] and agreed to its terms"),

24   *aff'd*, 442 F. App'x 266 (9th Cir. 2011). Hold's claim assumes that "Microsoft promised Hold that

25   it would not use, and would destroy, the data that was not related to specified domains and/or was

26   not related to Microsoft's then-existing customer." Compl. ¶ 7.2 But, again, the parties agree that

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

the MSSA governs Microsoft's ability to use and retain the Account Credential Data. *See id.* ¶¶ 4.1–4.9; *supra*, Part B. Because amendment would be futile, the Court should dismiss Hold's promissory estoppel claim with prejudice.

**F.      Hold's tortious interference claim should be dismissed for failure to state a claim.**

The Court should dismiss Hold's claim for tortious interference with a business expectancy for failure to sufficiently allege the claim's essential elements: "(1) the existence of a valid . . . business expectancy; (2) knowledge of the . . . expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the . . . expectancy; (4) that the defendant . . . interfered for an improper purpose or used improper means; and (5) resulting damage." *Univera*, 2010 WL 3489932, at *5 (citation omitted). In fact, Hold's threadbare, conclusory allegations do not support any of the first four elements of its claim.

*First*, Hold has not sufficiently alleged the existence of a valid business expectancy. Hold avers that Brian Krebs is "a respected figure in the cybersecurity world" who provided Hold "with well-earned credibility," and that "Mr. Krebs [sic] role as a board member directly resulted in Hold entering into contracts with many of its largest, most consistent clients." Compl. ¶¶ 8.2–8.3. Hold claims that it "expected that Krebs' [sic] would remain on the board and continue to attract future business opportunities and profits." *Id.* ¶ 8.4.

Hold appears to allege *not* that Microsoft tortiously interfered with a business expectancy between Mr. Krebs and Hold, but rather that Microsoft interfered with expected business relationships between Hold and *other* unnamed third parties, i.e., unidentified "business opportunities and profits" that Mr. Krebs would theoretically attract. *See id.* But Hold "must identify 'a specific relationship' and 'identifiable third parties.'" *Stuc-O-Flex Int'l, Inc. v. Low & Bonar, Inc.*, No. 2:18-CV-01386-RAJ, 2019 WL 4688803, at *6 (W.D. Wash. Sept. 26, 2019) (citation omitted); *see also Straw v. Avvo, Inc.*, No. C20-0294JLR, 2020 WL 5066939, at *5 (W.D. Wash. Aug. 27, 2020) (dismissing tortious interference claim where plaintiff did "not offer any identifiable third

1  parties . . . beyond the amorphous group of Avvo users, which is inadequate"); *Pac. Nw. Shooting*

2  *Park Ass'n v. City of Sequim*, 144 P.3d 276, 281 n.2 (Wash. 2006) ("To show a relationship be-

3  tween parties contemplating a contract, it follows that we must know the parties' identities. . . .

4  [Plaintiff] must show a specific relationship between it and identifiable third parties."). Hold's

5  "[u]nspecified references"—to "clients," "future business opportunities," and "a consistent stream

6  of new business," Compl. ¶¶ 8.4, 8.8—are "not enough." *See Stuc-O-Flex Int'l*, 2019 WL 4688803,

7  at *6. Hold's tortious interference claim fails at the first legal stop.

8       **Second**, Hold fails to allege that Microsoft *knew* about a valid business expectancy (or even

9  of any relationship) between Hold and Mr. Krebs or Hold and other third parties. *See* Compl.

10  ¶¶ 3.45, 8.1–8.10; *United Fed'n of Churches, LLC v. Johnson*, 522 F. Supp. 3d 842, 854 (W.D.

11  Wash. 2021) (holding that plaintiff failed to satisfy the second element of its tortious interference

12  with business expectancy claim where it formulaically alleged that "Defendants had subjective

13  knowledge of the business relationship" (citation omitted)); *Mann L. Grp. v. Digi-Net Techs., Inc.*,

14  No. C13-59RAJ, 2013 WL 3754808, at *3 (W.D. Wash. July 15, 2013) ("There is no allegation in

15  the complaint that would make it plausible to conclude that Velaro was aware of Digi–Net's obli-

16  gations to Plaintiffs via the [contract]."); *Pendleton v. City of Spokane*, No. 2:18-CV-0267-TOR,

17  2018 WL 11468676, at *5 (E.D. Wash. Oct. 12, 2018) ("Plaintiff has failed to allege facts showing

18  . . . Defendants had knowledge of any valid business expectancy[.]"). In fact, there is not a single

19  allegation even linking Mr. Krebs or any unidentified "business opportunities" to the allegedly

20  false tweet (i.e., the alleged source of the interference). This also dooms Hold's claim.

21       **Third**, Hold does not sufficiently allege "intentional interference inducing or causing a

22  breach or termination of the . . . expectancy." *Univera*, 2010 WL 3489932, at *5. Hold merely

23  asserts—in conclusory fashion—that Microsoft "tortiously and intentionally interfered with

24  [Hold's] expectations" when Mr. Beaumont allegedly tweeted false information. Compl. ¶ 8.7.

25  Hold alleges no facts showing that Microsoft "desire[d] to bring about" the interference or knew

26  the interference was "certain or substantially certain to occur as a result of [Microsoft's alleged]

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 18

1    action." *Kazia Digo, Inc. v. Smart Circle Int'l, LLC*, No. C11-544RSL, 2012 WL 836233, at *4

2    (W.D. Wash. Mar. 12, 2012) (citation omitted) (dismissing tortious interference claim because

3    "Plaintiff nowhere alleges that defendant desired to disrupt plaintiff's relationship with Costco or

4    that it knew that interference with that relationship was certain or substantially certain to result");

5    *Bombardier v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1191 (W.D. Wash. 2019) ("Out-

6    side of a formulaic recitation of the tortious interference elements, Bombardier provides no factual

7    allegations to show that any breach of this business expectancy actually occurred."). Nor has Hold

8    alleged causation. As noted above, Hold does not aver a single fact linking the allegedly false

9    statement to Mr. Krebs or to any specific prospective customers or contracts that were allegedly

10   impacted. Absent allegations plausibly establishing intent and causation, Hold's claim fails as a

11   matter of law.

12       **Fourth**, Hold hasn't adequately pled that Microsoft interfered for an improper purpose or

13   used improper means, i.e., that Microsoft's alleged interference was "wrongful by some measure

14   beyond the fact of the interference itself, such as a statute, regulation, recognized rule of common

15   law, or an established standard of trade or profession." *United Fed'n of Churches*, 522 F. Supp. 3d

16   at 853 (citation omitted). Hold simply alleges that Microsoft's agent "tweeted false information in

17   retaliation for Mr. Holden's factual statements regarding TrickBot." Compl. ¶ 8.7.

18       But Hold cannot establish improper purpose or means by recasting a deficient defamation

19   claim as one for tortious interference. This Circuit has held that claims "for tortious interference

20   with business relationships . . . are subject to the same first amendment requirements that govern

21   actions for defamation." *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990). Here, Hold

22   does not even allege the content of the statement at issue, let alone establish the elements of a

23   defamation claim, e.g., by averring "facts giving rise to a reasonable inference that the offensive

24   statement was provably false." *Delashaw v. Seattle Times Co.*, C18-0537JLR, 2018 WL 4027078,

25   at *11 (W.D. Wash. Aug. 23, 2018) (cleaned up).

26

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

1    In sum, Hold's "formulaic recitation of the tortious interference elements" fails to survive

2    Rule 12(b)(6). *Bombardier*, 383 F. Supp. 3d at 1191; *see also Iqbal*, 556 U.S. at 678. And because

3    Hold had the opportunity to amend its complaint in response to the above arguments (*see* Dkt. 12

4    at 13–15), but failed to do so, its claim should be dismissed with prejudice. *See Mason v. Wash.

5    State*, No. CV C17-186 MJP, 2017 WL 6026937, at *6 (W.D. Wash. Dec. 5, 2017) ("Given that

6    [the plaintiff] has already been given an opportunity to correct this exact problem, dismissal with

7    prejudice is appropriate.").[6]

8                                      **CONCLUSION**

9    Microsoft paid Hold to collect and supply to Microsoft Account Credential Data—a De-

10   liverable owned by Microsoft. Because Microsoft cannot have breached the MSSA or NDA by

11   using and keeping a Microsoft-owned Deliverable, Hold's contract claims should be dismissed

12   with prejudice, as should its derivative breach-of-contract claims. And because the parties' con-

13   tract indisputably covers Microsoft's right to retain and use the Account Credential Data, Hold's

14   extra-contractual unjust enrichment and promissory estoppel claims should also be dismissed with-

15   out leave to amend. Lastly, the Court should dismiss Hold's formulaic tortious interference claim

16   with prejudice.

17

18

19

20

21

22

23

24   _____

25   [6] To the extent Hold separately alleges tortious interference based on a Microsoft employee's al-
     leged direction "to cease work with Hold," that theory of liability fails for the fundamental reason
26   that it does not even implicate a third party. *See* Compl. ¶ 3.44; *Stuc-O-Flex Int'l*, 2019 WL
     4688803, at *6.

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: 206.359.8000
Fax: 205.359.9000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Dated: August 11, 2023

By:  s/ David A. Perez

 s/ Alison R. Caditz

David A. Perez, WSBA No. 43959

Alison R. Caditz, WSBA No. 51530

**Perkins Coie LLP**

1201 Third Avenue, Suite 4900

Seattle, WA 98101-3099

Telephone: 206.359.8000

DPerez@perkinscoie.com

ACaditz@perkinscoie.com

Torryn Taylor Rodgers (admitted *pro hac vice*)

**Perkins Coie LLP**

505 Howard Street, Suite 1000

San Francisco, CA 94105

Telephone: 415.344.7000

TRodgers@perkinscoie.com

*Attorneys for Defendant Microsoft Corporation*

MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT – 21

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on August 11, 2023, I caused the foregoing document to be served on the following attorneys of record by the methods indicated:

| | |
|---|---|
| David R. Ebel, WSBA No. 28853<br>Davis Leigh, WSBA No. 58825<br>SCHWABE, WILLIAMSON & WYATT, P.C.<br>1420 5th Avenue, Suite 3400<br>Seattle, WA 98101-4010<br>debel@schwabe.com<br>dbleigh@schwabe.com<br><br>*Attorneys for Plaintiff Hold Security LLC* | \_\_\_   Via hand delivery<br>\_\_\_   Via U.S. Mail, 1st Class, Postage<br>          Prepaid<br>\_\_\_   Via Overnight Delivery<br>\_\_\_   Via Facsimile<br>\_\_\_   Via Email<br>X\_\_   Other:  E-Service |

Dated: August 11, 2023

By:  s/ *David A. Perez*
      David A. Perez, WSBA No. 43959
      **Perkins Coie LLP**
      1201 Third Avenue, Suite 4900
      Seattle, Washington 98101-3099
      Telephone: 206.359.8000
      DPerez@perkinscoie.com

CERTIFICATE OF SERVICE – 1